**John M. PEDUTO and El–Ro, Inc., Appellants,**

v.

**CITY OF NORTH WILDWOOD, Appellee.**

No. 88–5809.

United States Court of Appeals, Third Circuit.

Argued Feb. 3, 1989.

Decided June 29, 1989.

---

Louis R. Moffa, Jr. (argued), Kenney & Kearney, Cherry Hill, N.J., for appellants.

Steve Drake (argued), Savio, Reynolds & Drake, Absecon, N.J., for appellee.

Before HUTCHINSON, SCIRICA, and NYGAARD, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

This case arises from a claim by appellants John M. Peduto and El–Ro, Inc. that a temporary sewer moratorium and construction ban imposed by the City of North Wildwood, New Jersey constituted a compensable taking of their property. The district court dismissed appellants' complaint on res judicata grounds, holding that the New Jersey state court had already adjudicated appellants' federal claims. The primary issue in this appeal is whether applying New Jersey claim preclusion rules violates appellants' due process rights. Since New Jersey's inverse condemnation procedure afforded appellants a full and fair opportunity to litigate their federal claims in state court, we hold that appellants were not denied due process of law. Accordingly, we will affirm the order of the district court.

I.

Appellants owned and developed three condominium projects in the City of North Wildwood, New Jersey ("the City"). Construction on the individual projects commenced in August, 1984, October, 1984 and March, 1985 respectively. In August, 1985, the City imposed a sewer moratorium and construction ban pursuant to a directive from the New Jersey Department of Environmental Protection (NJDEP). The sewer moratorium temporarily prevented any further sewer connections or extensions. This ban allegedly delayed appellants' construction projects by an estimated eight months. Appellants assert that the City led them to believe sewer service would be available for their proposed projects. Appellants claim that the eight-month delay deprived them of the use of their property resulting in a temporary taking without compensation.

On July 10, 1986, appellants filed an action in the Superior Court of New Jersey, Cape May County, against the City, NJDEP, the Cape May County Municipal Utilities Authority and Van Note Harvey Associates. The Cape May action raised claims under state common law, 42 U.S.C.

§ 1983 and the federal and state constitutions. Count one alleged a compensable taking of property via inverse condemnation. Count two alleged a denial of procedural due process. Count three alleged a denial of substantive due process. Counts four and five alleged state and common law negligence. On May 11, 1987, the Cape May County Court dismissed appellants' complaint with prejudice. The court's opinion addressed appellants' federal claims at length. App. at 75–83. This decision was not appealed.

On July 23, 1987, appellants filed this action in federal district court, once again naming the City as a defendant. The complaint states claims virtually identical to counts one, two and three of the Cape May County action. On October 7, 1988, the district court granted the City's motion to dismiss appellants' complaint on res judicata grounds. Pursuant to the full faith and credit statute, 28 U.S.C. § 1738, the court applied New Jersey claim preclusion rules and determined that direct estoppel barred "relitigation of the federal questions actually litigated and determined in the Cape May County action." *Peduto v. City of North Wildwood*, 696 F.Supp. 1004, 1007 (D.N.J.1988). This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291. Since we are concerned with the interpretation and application of legal precepts, our standard of review is plenary. *United States v. Adams*, 759 F.2d 1099, 1106 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

## II.

Appellants do not seriously contest that the district court erred in its application of New Jersey issue preclusion principles;[1] instead they claim that the interplay between federal takings jurisprudence and New Jersey's Entire Controversy Doctrine denied them an opportunity to litigate their federal claims in federal court, thereby denying them due process. First, appellants assert that under the procedure set forth in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–196, 105 S.Ct. 3108, 3120–22, 87 L.Ed. 2d 126 (1985), which held that a landowner must follow state procedures for seeking just compensation before bringing a Section 1983 action in federal court, they were required to bring an inverse condemnation action in New Jersey state court. Next, appellants argue that under New Jersey's "entire controversy doctrine", which requires that "a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding", *Woodward–Clyde Consultants v. Chemical and Pollution Sciences, Inc.*, 105 N.J. 464, 523 A.2d 131, 135 (1987) (citations omitted),[2] they were compelled to

---

1. In New Jersey, in order to apply issue preclusion, a court must find that (1) the prior court actually litigated and determined the issue; (2) the prior court's judgment was valid and final; (3) the determination of that issue was essential to the prior court's judgment; and (4) the parties in the subsequent action are the same as those in the prior one. *City of Plainfield v. Public Service Elec. and Gas Co.*, 82 N.J. 245, 258, 412 A.2d 759, 766 (1980) (citing Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977)); *Charlie Brown of Chatham v. Board of Adjustment*, 202 N.J.Super. 312, 495 A.2d 119, 127 (App.Div.1985) Here, appellants concede that the elements of issue preclusion were met, but allege that after the state court dismissed their inverse condemnation claim, the United States Supreme Court announced a change in the law. See *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (holding that temporary takings as well as permanent takings are compensable). While it has

been held that issue preclusion is not appropriate where the controlling legal principles have changed significantly since the state court judgment, see *Haring v. Prosise*, 462 U.S. 306, 313 n. 7, 103 S.Ct. 2368, 2373 n. 7, 76 L.Ed.2d 595 (1983); *Montana v. United States*, 440 U.S. 147, 163, 99 S.Ct. 970, 978–79, 59 L.Ed.2d 210 (1979), it is clear that a change in the law does not entitle appellants to a federal forum. Under *Williamson*, appellants must still obtain a judgment on their inverse condemnation claim in state court before their federal claims ripen.

2. The entire controversy doctrine is incorporated into the mandatory joinder of claims provision of the New Jersey Rules of Civil Procedure:

   Each party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by application of the entire controversy doctrine. N.J.R. Civ. P. 4:27–1(b).

litigate all of their claims, including their federal constitutional claims, in state court when they filed their inverse condemnation action. Thus, they argue that the New Jersey issue preclusion doctrine denied them a federal forum to present their federal claims, and that such a denial violates their due process rights.

■ Our analysis begins with the Full Faith and Credit Act, 28 U.S.C. § 1738. Under the Act, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986); *Nanavati v. Burdette Tomlin Memorial Hospital,* 857 F.2d 96, 111 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989). This rule has been applied to civil rights actions brought pursuant to 42 U.S.C. § 1983. *Migra v. Warren City School Dist. Bd. of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). A federal court can refuse to accord preclusive effect to a state court judgment if application of the state preclusion law would violate due process. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982) ("A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."); *Nanavati v. Burdette Tomlin Memorial Hospital,* 857 F.2d at 110–11; *see also Krison v. Nehls,*

767 F.2d 344, 348 (7th Cir.1985). Due process requires that a party have a full and fair opportunity to litigate their case. *Kremer,* 456 U.S. at 480–81, 102 S.Ct. at 1896–98. Thus, to avoid claim or issue preclusion, appellants must show that they did not have a full and fair opportunity to litigate their claims or issues. *Kremer,* 456 U.S. at 480–481, 102 S.Ct. at 1896–98.

■ Here, appellants pursued their federal claims in their state inverse condemnation action.[3] The state court heard appellants and rejected their federal claims on the merits. Appellants received a full and fair opportunity to litigate their federal claims. *See Collier v. City of Springdale,* 733 F.2d 1311, 1314 (8th Cir.) (An inverse condemnation action is a constitutionally adequate procedure for obtaining just compensation when the government seizes property without initiating formal condemnation procedures), *cert. denied,* 469 U.S. 857, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984). The Just Compensation Clause of the Fifth Amendment only requires "that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. at 194, 105 S.Ct. at 3120 (citations omitted).[4]

■ Appellants have never alleged that they did not have a full and fair opportunity to present their constitutional claims in their Superior Court inverse condemnation action. They claim it is wrong that the procedure outlined in *Williamson* and New Jersey's entire controversy doctrine should

---

3. In New Jersey, jurisdiction in inverse condemnation proceedings is vested in the Law Division of the Superior Court, where the court has authority to make a factual record of the proceedings. *Orleans Builders & Developers v. Byrne,* 186 N.J.Super. 432, 453 A.2d 200, 207 (App.Div. 1982); *see also* N.J.Stat.Ann. § 20:3–5 (West. Supp.1989). The action is initiated when an aggrieved property owner requests the court to issue a writ of mandamus compelling the appropriate governmental entity to initiate condemnation proceedings. *Matter of New Jersey Central Power & Light Co.,* 166 N.J.Super. 540, 544, 400 A.2d 128, 129 (App.Div.1979). At no time does an administrative agency make a determination in an action for inverse condemnation. *Id.*

4. In a normal takings case, the "taking" occurs when the government acts to condemn property in the exercise of its power of eminent domain, while the doctrine of inverse condemnation "is predicated on the proposition that a taking may occur without such formal proceedings." *First English Evangelical Church v. Los Angeles County,* 482 U.S. 304, 316, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987). The term "inverse condemnation" is essentially "a short-hand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980).

deny them a federal forum where they may present their federal claims. Denial of a federal forum, however, does not amount to denial of due process. When Congress enacted section 1983, "[it] was adding to the jurisdiction of the federal courts, not subtracting from that of the state courts." *Allen v. McCurry*, 449 U.S. at 99, 101 S.Ct. at 417. It was Congress' intent "to provide a federal remedy in three circumstances: where state substantive law was facially unconstitutional, where state procedural law was inadequate to allow full litigation of a constitutional claim, and where state procedural law, though adequate in theory, was inadequate in practice." *Id.* at 100–01, 101 S.Ct. at 417–18 (*citing Monroe v. Pape*, 365 U.S. 167, 173–74, 81 S.Ct. 473, 476–77, 5 L.Ed.2d 492) (1961). Where a party has been afforded a full and fair hearing in state court, section 1983 does not allow relitigation of the same issues in federal court "simply because the state court's decision may have been erroneous." *Allen*, 449 U.S. at 101, 101 S.Ct. at 418. These principles are especially applicable to this case. Appellants have exhausted their state claims, which, under *Williamson*, is a necessary predicate to their federal cause of action; but in doing so, they received a full and fair adjudication of their constitutional claims against the City in state court. Due process guarantees them no less, but entitles them to no more.[5]

Accordingly, we will affirm the order of the district court.

---

5. The district court concluded that appellants could have reserved their federal claims for a federal forum, as per the procedure adopted in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed. 2d 440 (1964). As the Supreme Court noted in *Allen v. McCurry*, "[t]he holding in *England* depended entirely on this Court's view of the purpose of abstention: Where a plaintiff *properly invokes federal court jurisdiction in the first instance*, the federal court has a duty to accept that jurisdiction ... Abstention may serve only to postpone, rather than to abdicate, jurisdiction, since its purpose is to determine whether resolution of the federal question is even necessary, or to obviate the risk of a federal court's erroneous construction of state law." 449 U.S. at 101 n. 17, 101 S.Ct. at 418–19 n. 17 (emphasis added). However, as plaintiffs here invoked the jurisdiction of the state court in the first instance, the application of *England* has no relevance here and, therefore, we do not reach the question of whether an *England*-type reservation was available.