Thomas DODD and Doris Dodd,
Plaintiffs–Appellants,

v.

HOOD RIVER COUNTY, An Oregon
Municipal Corporation, Defendant–
Appellee,

and

State of Oregon, Defendant–
Intervenor–Appellee.

No. 93–35207.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 1994.

Decided June 29, 1995.

Affirmed in part, vacated in part, and remanded.

855

John M. Groen, Pacific Legal Foundation, Bellevue, WA, for plaintiffs-appellants.

Lisa E. Lear, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendant-appellee.

Stephanie L. Striffler, Asst. Atty. Gen., Salem, OR, for defendant-intervenor-appellee.

Before ALDISERT *, TANG and THOMPSON, Circuit Judges.

Opinion by Judge ALDISERT; Dissent by Judge TANG.

ALDISERT, Circuit Judge.

This appeal requires us first to decide whether the district court erred in dismissing

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by

for lack of ripeness the Fifth Amendment taking claim brought by Appellants Thomas and Doris Dodd, owners of real estate in Hood River County, Oregon. If we conclude that the issue is now ripe for decision, we must then decide what contentions may now be met on the merits, and if so, whether we should meet the merits or permit the District Court to do so in the first instance. For the reasons set forth below, we affirm in part and vacate in part the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

In November 1983, the Dodds purchased 40 acres of land in a Forest Use Zone in Hood River County, Oregon for $33,000, intending to build a retirement home. Buyers of land in the Forest Use Zone at that time were on notice that the property was zoned exclusively for forest use, that the State had outlined mandatory goals for the management of forest use land, that the Oregon Land Use Board of Appeals ("LUBA") had issued an opinion binding Hood River County to adopt the restrictive zoning ordinance, and that the County was in the process of adopting that ordinance. The present ordinance prohibits construction of dwellings on land zoned for forest use unless the dwellings are "necessary and accessory to forest use." Hood River Co. Zoning Ord. § 5.10(I)(1).

Oregon maintains a comprehensive system of land use regulation that requires coordination between state and local government agencies. The State Land Conservation and Development Commission ("State Commission") adopts a framework of mandatory state-wide land use planning goals, and reviews for compliance with those goals the comprehensive land use plans of local governments. Or.Rev.Stat. §§ 197.225 and 197.040(2)(d); see Alexanderson v. Board of Comm'rs for Polk County, 289 Or. 427, 436, 616 P.2d 459 reh'g denied, 290 Or. 137, 619 P.2d 212 (1980).

designation.

In 1975, the State Commission adopted Goal 4, which defined forest lands, detailed the permissible uses allowed on forest land and provided guidelines for planning and implementation.[1] In February 1983, LUBA interpreted Goal 4 as permitting the construction of dwellings in Forest Use Zones only if the buildings were "necessary and accessory to forest use." *Lamb v. Lane County,* 7 Or. LUBA 137, 143 (1983). Pursuant to the state schema of land use regulation, and prior to the Dodds' purchase of the property in November 1983, Hood River County initiated the process of adopting a new complying ordinance. The County published notices of the proposed changes, and informed affected land owners, including the Dodds' predecessor-in-interest.

No one gave actual notice to the Dodds that the County was considering changing the land use restrictions relative to the property. They received a report dated July 7, 1983 from the County Sanitarian stating that the parcel was suitable for a septic system. On January 24, 1984, an employee of the County Planning Department signed a Land Use Compatibility Statement stating that a proposed single-dwelling residence on the property was compatible with State-wide Land Use Planning Goals in existence at that time. On February 10, 1984, the County Sanitarian sent a letter to the Dodds stating their plan to build in two years "would appear to leave opportunity for the water supply system to be developed." However, the record demonstrates that no county official represented that the necessary building permits would be issued.

In December 1984, the County Board of Commissioners approved the ordinance requiring that forest dwellings be allowed in forest use zones only where "necessary and accessory" to forest use.[2] In January 1985, the State Commission acknowledged that Hood River County's ordinance was in compliance with the state's planning goals.

Some six years passed before the Dodds made their initial inquiry with the County Planning Department about the construction of a dwelling on their property. In 1990 they filed and were denied applications for land use permits, variances, zone changes and comprehensive plan changes. Pursuant to Section 72.40 of the Zoning Ordinance, the Dodds appealed to the County Planning Commission. After conducting public hearings on the Dodds' requests, the County Planning Commission upheld the Planning Director's decision in April 1991. Thereafter, the Dodds appealed to the Board of County Commissioners, which conducted a public hearing, considered the record before the Planning Commission, and in July 1991, upheld the Planning Commission's decision.

 In August 1991, the Dodds filed a Notice of Intent to Appeal with LUBA, which under state law has exclusive jurisdiction to review land use decisions. Or.Rev. Stat. § 197.825. In their Petition for Review dated November 12, 1991, the Dodds contended that the County improperly construed the zoning requirements and issued a decision unsupported by substantial evidence. Pendent to these claims, the Dodds asserted

---

1. Goal 4 provided in relevant part:

 Forest land shall be retained for the production of wood fibre and other forest uses. Lands suitable for forest uses shall be inventoried and designated as forest lands. Existing forest land uses shall be protected unless proposed changes are in conformance with the comprehensive plan
 * * *
 Forest uses—are (1) the production of trees and the processing of forest products; (2) open space, buffers from noise, and visual separation of conflicting uses; (3) watershed protection and wildlife and fisheries habitat; (4) soil protection from wind and water; (5) maintenance of clean air and water; (6) outdoor recreational activities and related support services and wilderness values compatible with these uses; and (7) grazing land for livestock.

2. The restrictions on forest use zoned land in Hood River County are set out in Article 5 of the County Zoning Ordinance. The purposes of that zone are stated as follows:

 The Forest (F–1) Zone is established to designate and reserve areas for the purpose of maintaining renewable forest resource production, retention of watershed productivity, recreation and other compatible uses.
 It is the purpose of this zone to discourage land use incompatible with the management and development of forest resources in order to maximize forest resource production and to minimize the possibilities of damage from fire, pollution and conflict caused by urbanization. It is further intended to retain sensitive land and water resources. Overall the zone is intended to meet the requirement of Goal # 4.

a claim under the Oregon taking clause. Article I, Section 18 of the Oregon Constitution provides: "Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered[.]" LUBA has subject matter jurisdiction over federal and state constitutional claims. Or.Rev.Stat. § 197.835(7)(a)(E); *see Dunn v. City of Redmond,* 303 Or. 201, 735 P.2d 609 (1987).

The Dodds did not pursue the taking claim under the Fifth Amendment of the United States Constitution at that time, making a specific reservation in their Petition for Review in which they "expressly reserve[d] their right to have their federal claims adjudicated in federal court."

LUBA affirmed the County's decisions, concluding: (1) the County interpreted and applied the "necessary and accessory" test in a manner consistent with that required by Oregon's appellate courts; (2) the County did not err in finding that the Dodds' proposed dwelling was not "necessary and accessory" to forest use; and (3) because the timber on the property had a value of approximately $10,000, there was no denial of a substantial beneficial use of the property and thus, no regulatory taking under the Oregon taking clause. *Dodd v. Hood River County,* 22 Or. LUBA 711 (1992). The Dodds appealed the LUBA decision to the Oregon Court of Appeals.

The Court of Appeals affirmed, determining that there had been no taking under the Oregon Constitution and rejecting the Dodds' argument that the regulations did not advance a legitimate governmental interest because the County allowed existing residences to remain as nonconforming uses in a Forest Use Zone. *Dodd v. Hood River County,* 115 Or.App. 139, 143, 836 P.2d 1373 (1992). The Dodds appealed to the Supreme Court of Oregon which, on July 22, 1993, also affirmed. *Dodd et al. v. Hood River County et al.,* 317 Or. 172, 855 P.2d 608 (1993).

Meanwhile, as the state proceeding was ongoing, the Dodds filed a complaint under 42 U.S.C. § 1983 on November 5, 1991 in federal district court against the County, asserting violations of substantive due process, equal protection and the federal taking clause of the United States Constitution as well as the Oregon taking clause. The State of Oregon intervened as a party defendant. In August 1992, the district court granted the parties' joint request for a stay pending the resolution of matters before the Oregon state court system.

In October 1992, the County and State moved for summary judgment. In January 1993, the district court heard and decided the motion at a time prior to the final decision of the Oregon Supreme Court. It dismissed as unripe the Dodds' Fifth Amendment taking claim, and entered summary judgment in favor of the County and State on all other counts. The Oregon Supreme Court has now decided the appeal adversely to the Dodds.

We are to decide whether the Dodds were required to pursue other remedies or take other action in the state court system before seeking relief in the federal court. If no further action by them was required, we are to determine the effect of the state court actions on the Dodds' federal claim, and if the federal claim is still viable we must decide whether we or the district court should consider the claim in the first instance.

Jurisdiction was proper in the district court under 28 U.S.C. § 1343(a)(3). We have appellate jurisdiction under 28 U.S.C. § 1291. This appeal was timely filed under Rule 4(a), Federal Rules of Appellate Procedure. This court reviews de novo a district court's order of summary judgment. *McMillan v. Goleta Water Dist.,* 792 F.2d 1453, 1456 (9th Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). Ripeness is a question of law, also reviewed de novo. *Herrington v. County of Sonoma,* 857 F.2d 567, 568 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).

The federal complaint alleges that the County and State deprived the Dodds' of federal constitutional protections by taking their property without just compensation in violation of the Fifth and Fourteenth Amendments. The Dodds contend the Hood River County zoning ordinance, as applied to their

property; constitutes a taking. The district court dismissed the taking claim without prejudice on grounds of ripeness while the Dodds' appeal to the Oregon Supreme Court was pending. It dismissed because *"[Williamson County Regional Planning Comm'n v.] Hamilton Bank [of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985),] at least requires [the appeal to the Oregon Supreme Court] to be completed for plaintiffs' fifth amendment claim to be ripe." Opinion and Order at 5. Subsequent to the district court's dismissal without prejudice, the Oregon Supreme Court decided the appeal, but the County and State continue to challenge the ripeness of the Dodds' Fifth Amendment claim.

## II.

The decision in *Williamson County,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), established two distinct requirements for taking claims under the rubric of ripeness:

First, "the government entity charged with implementing the regulations [must have] reached a final decision regarding the application of the regulations to the property at issue." 473 U.S. at 186, 105 S.Ct. at 3116.

Second, plaintiffs must have sought "compensation through the procedures provided by the State for obtaining such compensation." 473 U.S. at 195, 105 S.Ct. at 3120.

Both the final decision and compensation elements must be ripe before the claim is justiciable. We consider each in turn.

■ The final decision element is well-developed and easily applied here. Beginning with *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), *Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), and *Hodel v. Virginia Surface Min. & Reclamation Ass'n. Inc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Court has declined to rule on taking claims when it believed the property owner had not received a final and definitive decision from a land use regulatory body on development of the property at issue. In *Williamson County,* the taking claim was unripe because there re-

mained the "potential for ... administrative solutions." 473 U.S. at 187, 105 S.Ct. at 3117 (landowner failed to seek variances that could have allowed development). In applying the final decision requirement, we have emphasized that local decision-makers must be given the opportunity to review at least one reasonable development proposal before we will consider ripe an as-applied challenge to a land use regulation. *See, e.g., Southern Pacific Transp. Co. v. City of Los Angeles,* 922 F.2d 498, 503 (9th Cir.1990), *cert. denied,* 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1454 (9th Cir.), *modified,* 830 F.2d 968 (1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). Finality also requires the local government to determine the type and intensity of development that land use regulations will allow on the subject property; this determination helps the court evaluate whether regulation of the subject property is excessive by identifying the extent of the regulation. *See Herrington v. County of Sonoma,* 857 F.2d at 570; *Lai v. City and County of Honolulu,* 841 F.2d 301, 303 (9th Cir.), *cert. denied,* 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988). Thus, a landowner may need to submit modified development proposals that satisfy the local government's objections to the development as initially proposed. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1501 (9th Cir.1990); *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 351–53, 106 S.Ct. 2561, 2567–68, 91 L.Ed.2d 285 (1986).

■ Here, the final decision requirement was met. The Dodds filed land use and conditional use permit applications, and petitioned for zone and comprehensive plan changes with the County. These applications were denied in succession by the Planning Director, the County Planning Commission, and the Board of County Commissioners. The State of Oregon reached a final and definitive position on the Dodds' applications and petitions.

## III.

■ Once the appropriate state agency reaches a final decision, the second ripeness

requirement of *Williamson County*, the compensation element, is triggered. A federal court lacks jurisdiction to consider an as-applied regulatory taking claim until a determination is reached that "just compensation" has been denied by the state:

> [B]ecause the Fifth Amendment proscribes taking *without just compensation*, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a Section 1983 action.

473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13 (emphasis added). In *Williamson County*, the Court concluded that Hamilton Bank's taking claim was not ripe because the Bank failed to utilize available state procedures:

> Under Tennessee law, a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property under certain circumstances ... [U]ntil it has utilized that procedure, its taking claim is premature.

*Id.* at 196–97, 105 S.Ct. at 3122. *See also Jama Const. v. City of Los Angeles*, 938 F.2d 1045, 1047–48 (9th Cir.1991) (Dismissed as unripe where plaintiff "did not seek compensation through California procedures before bringing its federal action."), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1293, 117 L.Ed.2d 516 (1992); *Bateson v. Geisse*, 857 F.2d 1300, 1306 (9th Cir.1988) (Because Montana recognizes inverse condemnation under the State Constitution, plaintiff must "pursue [that claim] before he can state a [federal] taking claim.").

Oregon argues that the Dodds' Fifth Amendment claim is unripe because they have yet to pursue compensation in state court under all available state procedures. It contends that available state procedures include an action brought under the Fifth Amendment federal taking clause.

We look first at the text of *Williamson County* to determine whether the Dodds must pursue a Fifth Amendment action in state court in order to ripen their claim. In dismissing the *Williamson County* plaintiffs' claims as unripe, the Supreme Court focused exclusively on Tennessee state law:

> The Tennessee state courts have interpreted § 29–16–123 to allow recovery through inverse condemnation where the "taking" is effected by restrictive zoning laws or development regulations. *See Davis v. Metropolitan Govt. of Nashville*, 620 S.W.2d 532, 533–534 (Tenn.App.1981) [ (available remedies under state law for inverse condemnation) ]; *Speight v. Lockhart*, 524 S.W.2d 249 (Tenn.App.1975) [ (same) ].... [U]ntil it has utilized that procedure, its taking claim is premature.

*Williamson County*, 473 U.S. at 196–97, 105 S.Ct. at 3122. The Court made no reference to the pursuit of the Fifth Amendment claim in state court.

Similarly, on countless occasions we have assessed the ripeness of a federal taking claim without mentioning the need to pursue a federal taking action in state court; instead, we have looked exclusively to—and instructed litigants to pursue remedies under—state substantive law. For example, in *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1402, 1408 n. 3 (9th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990), we held that claims under the just compensation clause were not ripe "until available state compensation remedies had been exhausted.... [P]laintiffs can obtain compensation under state law, a remedy they have not taken advantage of." *See also Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161, 164 (9th Cir.1993) ("Compensation ... available under California law"); *Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 622 (9th Cir.1992) ("state remedies"), *cert. denied*, — U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993); *Austin v. City and County of Honolulu*, 840 F.2d 678, 680 (9th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988) (Plaintiff failed to "seek compensation under state law."); *Hoehne v. County of San Benito*, 870 F.2d 529, 531 (9th Cir.1989) (same).[3]

---

3. It is also the prevailing view among other courts of appeals that a taking plaintiff is required to pursue remedies available under state substantive law. *See, e.g., Reahard v. Lee County*,

We, therefore, conclude that under the teachings of *Williamson County* and decisions of this court in the context of ripeness, the compensation element is satisfied if remedies available under state law have been pursued.

## IV.

The foregoing discussion leads to our rejection of the notion that *Williamson County* stands for the proposition that in taking cases the federal forum can be used only to compensate for the inadequacies of state taking procedures. Support for that notion emanates from the following passage in *Williamson County*:

> [I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 195, 105 S.Ct. at 3121. We concede that the Court's language is ambiguous, and that from these words it can be argued that federal courts will not be hospitable to state taking claim until (1) the claimant has asserted a federal Just Compensation Clause claim in the state court and (2) has received either no compensation or an amount not deemed "just." We will not allow this one-sentence tail to wag the entire opinion dog.[4] In addition to our discussion in Part III, other reasons support the conclusion we reach today.

We deem it extremely significant that the Court characterized the compensation element as an issue of ripeness. The central concern of ripeness is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all. 13A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532 at 126 (*citing Thomas v. Union Carbide Agr. Prods. Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985)). If an issue can be illuminated by the development of a better factual record, a challenge may be unripe. *See Pacific Legal Found. v. State Energy Resources Conservation and Dev. Comm'n,* 659 F.2d 903, 915 (9th Cir.1981), *aff'd on other grounds,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Hoehne,* 870 F.2d at 532. The Fifth Amendment action is not more "developed" or "ripened" through presentation of the ultimate issue—the failure of a state to provide adequate compensation for a taking—to the state court. Indeed, such a requirement would not ripen the claim, rather it would extinguish the claim. *See Palomar Mobilehome Park v. City of San Marcos,* 989 F.2d 362 (9th Cir.1993). Declining to hear a case on ripeness grounds is appropriate in situations where there is a reasonable prospect that the state courts may adjust state law to avoid or alter the constitutional question. 13A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.1 at 126. But where deference rests instead "on the prospect that the state courts may entertain and decide the constitutional question, the issue of comity should be addressed directly without reliance on ripeness." *Id.*

Reduced to its essence, to hold that a taking plaintiff must first present a Fifth Amendment claim to the state court system as a condition precedent to seeking relief in a federal court would be to deny a federal forum to every takings claimant. We are

30 F.3d 1412, 1414 (11th Cir.1994) ("The dispositive issue in this case is ... whether the plaintiffs had at their disposal an available state remedy, such as an inverse condemnation action ..."); *J.B. Ranch, Inc. v. Grand County,* 958 F.2d 306, 308 (10th Cir.1992) ("inverse condemnation suit available under Utah law"). *See also, Miller v. Campbell County,* 945 F.2d 348, 352 (10th Cir.1991), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992); *Gilbert v. City of Cambridge,* 932 F.2d 51, 65 (1st Cir.1991), *cert. denied,* 502 U.S. 866, 112 S.Ct. 192, 116 L.Ed.2d 153 (1992); *Villager Pond, Inc. v. Town of Darien,* 1995 WL 299931 at *5, 56 F.3d 375, 380–81 (2nd Cir. May 17, 1995); *Bigelow v. Michigan Dept. of Natural Resources,* 970 F.2d 154, 158 (6th Cir.1992); *Biddison v. City of Chicago,* 921 F.2d 724, 727 (7th Cir.1991).

4. More elegantly put, in a paraphrase of Learned Hand, "we will not make a fortress out of the dictionary; but ... remember that [judicial opinions] always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.) *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

satisfied that *Williamson County* may not be interpreted to command such a revolutionary concept and draconian result. The case law is clear that with the exception of federal habeas corpus review of state convictions under 28 U.S.C. § 2254, the determination of federal constitutional questions in state court systems may not be reviewed or repeated in the federal systems. The Court in *Allen v. McCurry*, 449 U.S. 90, 94, 104, 101 S.Ct. 411, 414, 420, 66 L.Ed.2d 308 (1980) said that "[t]he federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel," excepting only "a federal writ of habeas corpus, the purpose of which is not to redress civil injury but to release the applicant from unlawful physical confinement."

Another important consideration has been the direction of taking jurisprudence subsequent to *Williamson County*. Less than two years after the decision, the Court faced a kindred issue of state inverse condemnation and stated:

> We have recognized that a landowner is entitled to bring an action [in state court] in inverse condemnation as a result of "the self-executing character of the [federal] constitutional provision with respect to compensation . . ."
>
> [I]t has been established at least since *Jacobs v. United States*, 290 U.S. 13 [54 S.Ct. 26, 78 L.Ed. 142] (1933), that claims for just compensation are grounded in the Constitution itself. [The claim] rested upon the Fifth Amendment. Statutory recognition [by the state] was not necessary.
>
> [I]n the event of a taking, the compensation remedy is required by the Constitution.

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315–16, 107 S.Ct. 2378, 2385–86, 96 L.Ed.2d 250 (1987) (citations omitted).

Moreover, subsequent to *Williamson County*, we and other courts of appeals routinely have held that state procedures are considered inadequate only when state law provides no post-deprivation remedy for a taking. *See Austin*, 840 F.2d at 681 (Hawaiian courts and legislature had neither accept-

ed nor rejected inverse condemnation action under Article I, Section 20 of the Hawaiian Constitution); *Levald Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir.1993) ("the unavailability of state remedies is the functional equivalent of the denial of just compensation"), *cert. denied*, —— U.S. ——, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994); *see also New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1493–94 (11th Cir.) ("Florida law . . . provided no post-deprivation remedy."), *cert. denied*, —— U.S. ——, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993).

We acknowledge the Court's unwillingness to have the federal courts become a super appeals board for local zoning decisions. *See Hoehne*, 870 F.2d at 532 ("The Supreme Court has erected imposing barriers . . . to guard against the federal courts becoming the Grand Mufti of local zoning boards."). We disagree, however, with the suggestion that *Williamson County* is a thinly-veiled attempt by the Court to eliminate the federal forum for Fifth Amendment taking plaintiffs and that any federal remedy is limited to actions based on inadequate taking procedures in the state.

## V.

The State and County urge us to consider claim preclusion as an alternative ground to dismiss the Dodds' Fifth Amendment claim. They contend that, even if presentation of the Fifth Amendment claim in state court is not a ripeness requirement, the prohibition against claim-splitting precludes subsequent litigation of that claim in federal court.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that federal courts "give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). Oregon courts adhere to standard principles of claim and issue preclusion. *See Rennie v. Freeway Transp.*, 294 Or. 319, 656 P.2d 919 (1982).

Our analysis begins with the recognition that in the state proceedings, first before the state administrative agency and later before the state appellate courts, the Dodds expressly reserved the right to proceed in claims for violations of federal constitution protection in other litigation.

▓▓▓▓ It is against this backdrop that we must analyze the general rule in claim preclusion jurisprudence that a plaintiff who has prosecuted one action against a defendant and obtained a valid final judgment is barred by res judicata from prosecuting another action against the same defendant where (a) the claim in the second action is one which is based on the same factual transaction that was at issue in the first; (b) the plaintiff seeks a remedy additional or alternative to the one sought earlier; and (c) the claim is of such a nature as could have been joined in the first action. *See* Or.Rev.Stat. § 43.130; *Van De Hey v. United States Nat'l Bank of Oregon,* 313 Or. 86, 829 P.2d 695 (1992). Underlying this standard is the need to strike a delicate balance between the interests of the defendant and of the courts in bringing litigation to a close and the interest of the plaintiff in the vindication of a just claim. *See Hanson v. Oregon Dept. of Revenue,* 294 Or. 23, 31, 653 P.2d 964 (1982).

▓▓▓▓ We conclude that the Dodds' Fifth Amendment claims are not subject to the general prohibition against claim-splitting as the result of certain recognized exceptions. First, consent or tacit agreement is clear justification for splitting a claim. *Restatement (Second) of Judgments* § 26(1)(a), and comment a (1982). Because a primary purpose of claim preclusion is to protect defendants from being harassed by repetitive actions based on the same claim, the rule need not be enforced where the State and County have implicitly consented to the splitting of the Dodds' claim under state and federal laws. *See Rennie,* 294 Or. at 329 n. 9, 656 P.2d 919 (*citing* 18 Charles A. Wright, Arthur C. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4415 at 124–125; *and* Annot., 40 A.L.R.3d 108 (1971)). We find implicit consent here. The County and State failed to object in a situation where they were defending two simulta-

neous actions; moreover, they made a joint request with the Dodds to stay the federal action until resolution of matters pending in the state court.

▓▓▓▓ Second, we conclude that the Oregon courts reserved the issue for later determination. A court may be able to reserve part of a plaintiff's claim for subsequent litigation by expressly omitting any decision with regard to it in the first judgment. *Western Baptist Home Mission Bd. v. Griggs,* 248 Or. 204, 211, 433 P.2d 252 (1967); *Rennie,* 294 Or. at 330, 656 P.2d 919.

It may appear in the course of an action that the plaintiff is splitting a claim, but that there are special reasons that justify his doing so, and accordingly that the judgment in the action ought not to have the usual consequences of extinguishing the entire claim; rather the plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action.

*Restatement (Second) of Judgments* § 26(1)(b). We conclude that the Oregon courts sufficiently reserved this issue by repeatedly acknowledging that the Dodds' federal constitutional claims were not before them and were pending in the federal district court. *See, e.g., Dodd,* 115 Or.App. at 142 n. 2, 836 P.2d 1373 ("No federal constitutional contention is asserted here. Some of the parties are also parties to a pending related federal court action."); *Dodd,* 317 Or. at 175 n. 2, 855 P.2d 608 ("Petitioners claim to be reserving their right to have any claims that they might wish to make under the federal constitution determined in federal court. This case, therefore, presents only issues of Oregon Law.").

We thus decline to dismiss the Fifth Amendment claim on the basis of claim preclusion. Accordingly, we need not confront the Dodds' attempt to avert the pains of preclusion law through use of an *England* reservation, which typically is available to litigants that are in state court "involuntarily" as a result of *Pullman* abstention by the federal court. *See England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *see*

also *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

## VI.

Although we decline to dismiss the Dodds' Fifth Amendment taking claim, we will not reach the merits of that claim for two important and independent reasons.

### A.

First, although we were required to decide the question of claim preclusion in the context of our elaborate ripeness discussion in Parts II, III and IV, the question of issue preclusion is still very much in this case. The difference between the two concepts has been succinctly described by Justice Potter Stewart:

> The federal courts have traditionally adhered to the related doctrines of res judicata [claim preclusion] and collateral estoppel [issue preclusion]. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.

*Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 414 (footnote and citations omitted).

■ An important question that is yet to be decided by any court is whether the decision of the Oregon Supreme Court in *Dodd et al. v. Hood River County et al.*, 317 Or. 172, 855 P.2d 608 (1993) on the taking questions presented by the Dodds under Article I, Section 18 of the Oregon Constitution was an equivalent determination under the federal taking clause so as to invoke the doctrine of issue preclusion. In its discussion, the Ore-

gon court made reference to evidence contained in the record before it and suggested that "investment-backed expectations" are not part of an Article I, section 18 analysis, and implied that this analysis would be available under a Fifth amendment taking. Under the circumstances, we believe that the issue preclusion issue should first be presented to the district court because the development of a factual record may be necessary to illustrate the resemblances and the distinctions between claims brought under the Oregon and federal constitutions. It will be for the district court to decide in the first instance whether a factual predicate is necessary to decide the question of issue preclusion.

### B.

Accordingly, we will not meet the merits of the Dodds' Fifth Amendment taking contention. The preliminary decision of the district court on remand will determine whether the Dodds are entitled to have this question litigated. Even if this additional problem were not present in this case, we would have declined to address the federal taking contention.

■ As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This is not a hard and fast rule:

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases ... Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, *see Turner v. City of Memphis*, 369 U.S. 350 [82 S.Ct. 805, 7 L.Ed.2d 762] (1962), or where "injustice might otherwise result." *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).

*Golden Gate Hotel Assoc. v. City and County of San Francisco*, 18 F.3d 1482 (9th Cir.1994)

(quoting *Singleton v. Wulff*, 428 U.S. at 121, 96 S.Ct. at 2877).

■ Although the parties fully briefed the merits before the district court and, on appeal, have expressed a willingness for us to decide this issue, we will not consider the federal taking claim. The District Court's dismissal was grounded on its own lack of jurisdiction and was without prejudice. The State and County, having not filed a cross-appeal, may urge any ground that would result in an affirmance of the judgment below in their favor, but may not obtain from us relief more extensive than it received from the district court. *See* Wright & Miller, *Federal Practice and Procedure* § 3904 n. 7 at 198; *see also Langnes v. Green*, 282 U.S. 531, 538–39, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931); *Benson v. Armontrout*, 767 F.2d 454, 455 (8th Cir.1985); *New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162, 1205–06 (3rd Cir.1991). Thus, even if the question of issue preclusion were not in this case, we would require the district court to address the merits in the first instance.

We conclude that the County "has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question," *Williamson County*, 473 U.S. at 191, 105 S.Ct. at 3119, and that the Dodds have "exhausted ... available state compensation remedies." *Sinaloa Lake*, 882 F.2d at 1408. We remand for consideration in the first instance. the merits of the issue preclusion contention; this is a necessary prelude to the possible consideration of the Dodds' Fifth Amendment taking claim.

## VII.

The Dodds also appeal the district court's grant of summary judgment in favor of the County and State on the substantive due process claims. We affirm the decision of the district court, discerning no evidence in the record to support a claim of arbitrary and capricious government action.

■ "There is, of course, no federal Constitutional right to be free from changes in the land use laws." *Lakeview Dev. Corp. v. City of South Lake Tahoe*, 915 F.2d 1290 (9th Cir.1990), *cert. denied*, 501 U.S. 1251, 111 S.Ct. 2890, 115 L.Ed.2d 1055 (1991); *see also William C. Haas & Co. v. City & County of San Francisco*, 605 F.2d 1117 (9th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980). To establish a violation of their right to substantive due process, the Dodds must prove that the County's actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *see also Sinaloa Lake*, 882 F.2d at 1407. A substantive due process claim requires proof that the interference with property rights was irrational and arbitrary. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Federal judicial interference with a local government zoning decision is proper only where the government body could have no legitimate reason for its decision. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981); *Herrington*, 834 F.2d at 1498 n. 7. There is no denial of substantive due process if the question as to whether the government acted arbitrarily or capriciously is "at least debatable." *Clover Leaf Creamery Co.*, 449 U.S. at 469, 101 S.Ct. at 724.

■ There is no evidence to support the Dodds' claim that the County acted arbitrarily and capriciously by simultaneously adopting the zoning ordinance and reassuring the Dodds of their ability to build a home. Although the County sent several letters and reports to the Dodds recognizing their intention to build on the property and suggesting "compatibility" with then existing planning goals, this correspondence contained no false or misleading statements. Indeed, in the letter sent to the Dodds before they purchased the property, the County expressly warned that it should not be construed as a representation that the necessary building permits would be issued. Moreover, the County published notices of the proposed change and specifically notified the Dodds predecessor-in-interest. This evidence simply could not support the claim that the County acted irrationally.

 Similarly, we are persuaded that the zoning ordinance was adopted and applied by the County in order to advance legitimate state interests. The purposes of forest use zoning, set forth in the margin at note 2, plainly are legitimate and, with the exception of "forest production," are unchallenged by the Dodds. LUBA concluded that the County adopted the "necessary and accessory" test to comply with State-wide Land Use Planning Goal 4. LUBA ruled that the County properly applied and interpreted the "necessary and accessory" test in accordance with state appellate court decisions. Moreover, LUBA ruled that the County did not err in finding that the Dodds' proposed dwelling was not "necessary and accessory to forest use." Because the issue of whether the County acted arbitrarily and without a legitimate and rational basis for its decision is "at least debatable," summary judgment in favor of the County and State was appropriate.

Because of the paucity of evidence supporting the substantive due process claims, we need not address the issue of whether the Dodds claims are superseded by their taking claim(s). The district court properly entered summary judgment in favor of the County and State on the substantive due process claim.

### VIII.

The judgement of the district court is AFFIRMED in part and VACATED in part, and the proceedings REMANDED in accordance with the foregoing.

TANG, Senior Circuit Judge, dissenting:

The majority opinion concludes that the Dodds' case is ripe. I conclude the case is not ripe because the Dodds have not utilized state proceedings to obtain the just compensation required by the Fifth and Fourteenth Amendments. Accordingly, I dissent.

### I.

My disagreement with the majority opinion centers around the second ripeness requirement, that the Dodds "seek compensation through the procedures the State has provided for doing so." *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). According to the Supreme Court, an unconstitutional taking consists of two components: taking of property and subsequent denial of just compensation. If a property owner receives just compensation through the process the government provides, the property owner does not have a taking claim. *Id.* at 194–95, 105 S.Ct. at 3120–21.

The Supreme Court in *Williamson County* did not state that claimants seeking just compensation from state or local governments need seek in state proceedings only the *remedies* provided by state law. Rather, the Court required claimants to utilize state *"procedures"* to obtain just compensation. *Id.* at 194, 105 S.Ct. at 3120. The procedure available to the claimant in *Williamson County* was an inverse condemnation suit, as provided by Tenn.Code Ann. § 29–16–123. 473 U.S. at 196–97, 105 S.Ct. at 3121–22.

Inverse condemnation suits do not provide only the just compensation required under state law. Rather, such suits are a method of obtaining the just compensation required by the Fifth and Fourteenth Amendments. "A landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the constitutional provision with respect to compensation." *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 315, 107 S.Ct. 2378, 2386, 96 L.Ed.2d 250 (1987) (internal quotation omitted). "Claims for just compensation are grounded in the Constitution itself." *Id.* The state procedure *Williamson County* references is the procedure necessary to raise a federal taking claim in state court. Thus, under *Williamson County,* a taking claimant must litigate the federal constitutional claim through the processes the state provides.

The Supreme Court also compared the process for making a claim against state or local governments to the process for making a claim against the federal government. A taking claim against the federal government is "premature until the property owner has availed itself of the process provided by the

Tucker Act, 28 U.S.C. § 1491." *Williamson County*, 473 U.S. at 195, 105 S.Ct. at 3121 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–1020, 104 S.Ct. 2862, 2879–82, 81 L.Ed.2d 815 (1984)). The Tucker Act grants the U.S. Claims Court " 'jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution.' " *Monsanto*, 467 U.S. at 1017, 104 S.Ct. at 2880 (citing 28 U.S.C. § 1491).[1] Thus, a Tucker Act taking claim is a claim for the just compensation required by the Fifth Amendment. The Supreme Court indicated that the Tucker Act procedure is analogous to the state proceedings claimants must follow to obtain just compensation from state and local governments. *Williamson County*, 473 U.S. at 195, 105 S.Ct. at 3121. Therefore, claimants following state procedures, like those utilizing the procedure established under the Tucker Act, should raise the federal just compensation requirement.

The Ninth Circuit decisions applying the state procedure requirement of *Williamson County* are not inconsistent with this conclusion. The Ninth Circuit has regularly dismissed cases in which claimants did not seek compensation through inverse condemnation proceedings. *See, e.g., Bateson v. Geisse*, 857 F.2d 1300 (9th Cir.1988) (affirming dismissal of taking claim because claimant had not yet pursued inverse condemnation provided by Montana law); *Hoehne v. County of San Benito*, 870 F.2d 529 (9th Cir.1989) (case was ripe because at the time the suit was filed, prior to *First English Church*, California did not have an inverse condemnation remedy for regulatory takings); *Jama Const. v. City of Los Angeles*, 938 F.2d 1045 (9th Cir.1991), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1293, 117 L.Ed.2d 516 (1992) (affirming dismissal of case because, following *First English Church*, claimant had to seek compensation through procedures established by California law). These cases simply do not address the issue of whether claimants following state proceedings must seek the federal just compensation remedy. *First English* explains

that inverse condemnation is the process for obtaining the federal just compensation remedy.

## II.

Admittedly, if a taking claimant is required to litigate the constitutional claim in state court, the claimant is then barred by res judicata, i.e. claim preclusion, from bringing a federal court action. The Court in *Williamson County* did not address the res judicata bar. However, the Supreme Court has explained that claimants are not always entitled to vindicate federal rights in federal court. For example, in *Allen v. McCurry*, 449 U.S. 90, 92, 101 S.Ct. 411, 413–14, 66 L.Ed.2d 308 (1980), a criminal defendant moved to suppress evidence allegedly obtained in violation of the Fourth Amendment. The Court concluded collateral estoppel barred a subsequent § 1983 suit asserting the same Fourth Amendment violation. *Id.* at 105, 101 S.Ct. at 420.

Portions of the Court's analysis in *Allen* are relevant to the question of access to federal court for taking claimants. The Constitution does not give "every person asserting a federal right ... one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises." *Allen*, 449 U.S. at 103, 101 S.Ct. at 419. "There is ... no reason to believe that Congress [through passage of § 1983] intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all." *Id.* at 104, 101 S.Ct. at 420.

One could argue that the claimant in *Allen* still had a choice of forum because he could have filed a § 1983 suit rather than requesting suppression of the evidence in his criminal trial. However, practically speaking, a criminal defendant is unlikely to give up the

---

1. The Tucker Act, 28 U.S.C. § 1491, provides in relevant part:

 The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either

 upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

opportunity to suppress damaging evidence in order to retain his right to file a damages suit in federal court. The criminal defendant, like the claimant asserting a taking action against a state, must litigate the federal issue in state court.

*Allen* also explains the point at which a litigant normally confined to state proceedings may obtain access to federal court. The collateral estoppel bar is inapplicable when the claimant did not have a "full and fair opportunity to litigate" the issue decided by the state court. *Id.* at 101, 101 S.Ct. at 418. Thus, a claimant can file a federal suit to challenge the adequacy of state procedures.

Relying in part on *Allen,* the Third Circuit has concluded that application of New Jersey claim preclusion rules, which deprived takings claimants of the opportunity to litigate their federal claims in federal court, did not violate the Due Process Clause. *Peduto v. City of North Wildwood,* 878 F.2d 725, 726 (3rd Cir.1989). The takings claimants in *Peduto* raised both state and federal takings claims in state court, because *Williamson County* required filing an inverse condemnation suit in state court and New Jersey civil procedures rules required raising the federal claim in state court, under the New Jersey "entire controversy" doctrine.[2] The Third Circuit concluded that the Due Process Clause had not been violated because the claimants had a "full and fair opportunity" to litigate their federal claims. *Peduto,* 878 F.2d at 728. Denial of a federal forum is not a denial of due process. *Id.* at 729.

Furthermore, the Ninth Circuit has expressly concluded that, although *Williamson County* requires takings litigants to present their takings claims to state court to ripen the claim, "this requirement does not prevent the doctrine of res judicata from barring subsequent federal action." *Palomar Mobilehome Park Ass'n v. City of San Marcos,* 989 F.2d 362, 364 (9th Cir.1993). The

only difference between *Palomar* and the present case is that Palomar did not expressly reserve its federal claim.

### III.

As the majority points out, res judicata poses a problem even absent a requirement that claimants raise the federal just compensation claim in state court. Res judicata bars a second action based on the same facts when the claimant seeks an additional remedy and the claim could have been joined in the first action. *See* Or.Rev.Stat. § 43.130; *Van De Hey v. United States Nat'l Bank of Oregon,* 313 Or. 86, 829 P.2d 695, 698 (1992).

In response to this problem, the Dodds claim that, during the state proceedings, they were entitled to expressly reserve their federal claims for federal court pursuant to *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). *England* reservation applies when a litigant files a suit in federal court and the federal court stays proceedings to allow the state courts to consider state law questions. In such a situation, the litigant can inform the state court that she reserves federal issues for federal court. *Id.* at 421, 84 S.Ct. at 467–68. By doing so, the litigant avoids the bar of res judicata upon return to federal court.

Without addressing *England* reservation, the majority concludes that the Dodds reserved their federal claim because the county impliedly consented by failing to object to reservation,[3] and the state courts expressly acknowledged reservation. While this conclusion allows the Dodds to proceed in federal court, the majority skirts the issue of whether taking claimants can reserve their federal claim in order to avoid a res judicata bar when the government objects to reservation.

---

**2.** Under the "entire controversy" doctrine, a party who has elected not to raise a related part of the controversy is barred from raising it in a subsequent proceeding. *Peduto,* 878 F.2d at 727 (citing *Woodward–Clyde Consultants v. Chemical and Pollution Sciences, Inc.,* 105 N.J. 464, 523 A.2d 131, 135 (1987)).

**3.** This portion of the majority's analysis may be problematic because the issue of whether the federal court has jurisdiction is an independent inquiry. Generally, parties cannot through consent confer jurisdiction upon the federal courts. *See Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986).

If a taking claimant in the Dodds' position attempts to make an *England* reservation, several problems arise. First, *England* reservation applies when a suit begins in federal court, but the Dodds' taking claim began in a state administrative process. Indeed, to satisfy the *Williamson County* ripeness requirements, the Dodds had to begin with state proceedings. Were this the only problem, we could consider whether the rationale behind *England* reservation justifies reservation of federal taking claims when the claimant begins with mandatory state proceedings.

However, a far more crucial problem exists with respect to reservation of a federal taking claim. Unlike the *England* situation in which a federal court abstains to allow a state court to address state law issues, a taking claim in state court "is not an issue of state law the resolution of which might avoid a federal ruling." Thomas E. Roberts, "Fifth Amendment Taking Claims in Federal Court," 24 *Urban Lawyer* 479 (1992). Rather, a taking claim in state court:

> is a federal law issue, the Fifth Amendment, that the state court must decide. The *England* rule exists to protect the purpose of *Pullman* abstention to avoid federal constitutional rulings, but [*Williamson County v.*] *Hamilton Bank* demands that a state court make a federal constitutional ruling.

*Id.*

As discussed above, state just compensation procedures are designed to address the federal constitutional question. Indeed, such procedures are required by the Constitution. *First English Church,* 482 U.S. at 315, 107 S.Ct. at 2385–86. Reserving the federal question is simply not possible.

### IV.

Even if taking claimants are allowed to reserve their federal claims, the federal action will regularly be barred by collateral estoppel, i.e. issue preclusion. Indeed, the majority opinion remands to the district court for determination of whether issue preclusion bars the Dodds' claim. Just compensation requirements are likely to be similar under both federal and state law. In considering the Dodds' state law taking claim, the Oregon Supreme Court indicated that, while the takings claims under the Oregon and United States Constitutions are not identical, "the basic thrust [of the two constitutional provisions] is generally the same." *Dodd v. Hood River County,* 317 Or. 172, 855 P.2d 608, 613 (1993) (quoting *Suess Builders Co. v. City of Beaverton,* 294 Or. 254, 656 P.2d 306 (1992)). Furthermore, the Oregon Supreme Court considered, although it did not decide, whether courts applying the Oregon Constitution's taking clause must determine whether a regulation interferes with investment-based expectations. The Oregon Supreme Court obtained this standard from *Lucas v. South Carolina Coastal Council,* — U.S. —, — n. 8, 112 S.Ct. 2886, 2895 n. 8 (1992), a United States Supreme Court case analyzing a taking under the Fifth and Fourteenth Amendments. The Oregon Supreme Court's discussion indicates that Oregon courts look to federal taking jurisprudence to determine the applicable standards under Oregon law.

### V.

Although the majority expresses consternation about the "revolutionary concept and draconian result" of limiting takings claimants' access to federal court, the majority's attempt to keep the door to federal court propped open is largely illusory. In order to avoid the operation of a res judicata bar to federal court, the majority rejects the conclusion that, under *Williamson County,* taking claimants must raise their federal taking claim in state proceedings. The majority concludes that taking claimants need raise only their state taking claims in state court. The res judicata problem remains, however, because res judicata generally bars claims that could have been joined in a prior proceeding. The majority fails to address how claimants will avoid the res judicata bar absent the unique circumstance of consent by the opposing governmental party and by the state court to reservation of the federal claim. Finally, even if res judicata does not bar the federal claim, collateral estoppel generally will. The state proceedings usually will determine the federal takings issue.

## VI.

I conclude the case is not ripe because the Dodds have not sought, through state proceedings, the just compensation required by the Fifth and Fourteenth Amendments. Normally, res judicata bars a federal claim that could have been brought in the course of state proceedings. However, the state court allowed the Dodds to reserve their federal claim. Therefore, rather than applying a res judicata bar, we should dismiss the federal action. The Dodds should be required to seek just compensation in state court.

For the foregoing reasons, I respectfully dissent.