Daniel WEINFURTHER, et al., Plaintiffs,

v.

SOURCE SERVICES CORPORATION EMPLOYEES PROFIT SHARING PLAN AND TRUST, et al., Defendants.

No. C-89-4572-CAL.

United States District Court, N.D. California.

March 22, 1991.

---

Pillsbury, Madison & Sutro, Russell L. Johnson, Matthew T. Powers, Dale B. Lohman, San Jose, Cal., for plaintiffs.

Richard L. Yankwich, Cynthia Beth Carlson, Mark Fowler, Ware & Freidenrich, Palo Alto, Cal., for defendants.

## ORDER AND OPINION ON MOTION FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Defendants have moved for summary judgment on all causes of action. The motion has been opposed, argued, and sub-

mitted for decision. The court has reviewed the moving papers, the opposing papers, the very substantial factual record filed in support of and in opposition to the motion,[1] the arguments of counsel, and the applicable authorities. The court concludes that there are no genuine issues of material fact and that judgment should be entered in favor of defendants.

## I.

Plaintiffs were employed by Source Services Corporation ("Source"), a company engaged in the business of employment search and placement. At the time of their departure in September 1986, plaintiffs formed a new company to engage in search and placement.

In this action, plaintiffs seek to recover benefits which had accrued during their employment at Source under the company's employee profit sharing plan and trust (the "plan"). Those benefits were denied to plaintiffs by defendants under the forfeiture and deferral provisions of the plan and the guidelines used by the plan's administrative committee. The committee decided that the forfeiture and deferral provisions applied because plaintiffs competed with Source within three years after leaving their employment, in violation of the non-competition provisions of the plan.

## II.

The complaint alleges three causes of action, all under ERISA, 29 U.S.C. § 1132. The first charges discrimination in the administration of the non-competition, forfeiture and deferral provisions of the plan. The second alleges that plaintiffs did not compete with Source within the meaning of the non-competition clause. The third alleges that the plan did not meet certain of the procedural requirements of the regulations under the ERISA statutes.[2]

The dispute between the parties now centers on three principal issues. The first is whether Source and defendants complied with the requirements of ERISA in making changes to the non-competition provisions of the plan, and in using the guidelines in the interpretation of those provisions. The second is whether plaintiffs were engaged in competition with Source. The third is whether there has been discriminatory enforcement of the non-competition provisions by defendants against plaintiffs. And, of course, the underlying question is whether those questions can be determined with no genuine issue of material fact, as required by Rule 56 of the Federal Rules of Civil Procedure.

■ Plaintiffs have no right to a jury trial on their ERISA causes of action. See *e.g., Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Because the court is the ultimate trier of fact, it has broader powers to find the facts in the context of this motion. *See* Schwarzer, *Summary Judgment Under Federal Rules,* 99 F.R.D. 465, 476–80. And the interpretation of the plan is an issue of law for the court to decide. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989).

## III.

Because the non-competition provisions of the plan are at the heart of the dispute, it is necessary to focus on their language.

### A.

The plan, as it was amended and restated through December 1985, contained the following non-competition provisions:

Paragraph 7.5(a)(ii) contained certain provisions for deferring the distributions of vested accounts in the event of competition by the employee. "Competition" was defined by subparagraph (E) as follows:

A Quota or Professional Employee will be considered to have competed if he works for a firm engaged, on a contingency, retainer or search basis, in the placement of accounting, financial, engi-

---

1. Discovery has been concluded.

2. A fourth cause of action seeks the relief of a declaratory judgment.

neering or computer personnel in the United States or Canada as a partner, sole proprietor, shareholder, officer, director, employee or agent, or if he engages in any other placement activity or temporary (Virtual Help) activity in competition with the Employer.

The plan also contained a clause providing for the forfeiture of the interests of an employee who competes with Source within three years following his termination:

16.1(a) *Forfeiture for Competition.* Notwithstanding the provisions of Article 6 or other provisions which might otherwise confer any vested rights upon any Participant in all or any part of the value of his Account(s), effective July 8, 1983, the undistributed value of the Account(s) of a Quota or Professional Employee who has less than ten (10) Years of Service for Vesting Purposes shall, except as provided in Article 16.1(c), be forfeited if, at any time prior to the date three (3) years following this termination of employment, such Employee competes with the Employer.

The definition of "competition" in that paragraph is the same as subparagraph (E).

Plaintiffs concede that they received copies of this plan and that they were aware of the non-competition provisions.

The non-competition clauses are strict. However, they do have objective standards. And the Ninth Circuit has upheld the validity of clauses that were similar, or even less specific than these. *Clark v. Lauren Young Tire Center Profit Sharing Trust,* 816 F.2d 480 (9th Cir.1987); *Lojek v. Thomas,* 716 F.2d 675 (9th Cir.1983).

### B.

In August 1986, the Board of Directors amended the plan to change the definition of "competition." The new definition, applicable to both section 7.5(a)(ii) and section 16.1(a), was as follows:

A Quota or Professional Employee will be considered to have competed if he is directly or indirectly engaged in making placements of computer, accounting, financial or engineering personnel in competition with the Employer.

The court does not believe, in so far as their application to *this* case is concerned, that there is any material difference between the 1985 and 1986 definitions of "competition." Both focus on the placement of computer, financial, accounting and engineering personnel. And both end with the language "in competition with" Source. While some of the language changes may arguably have made the definition broader or narrower, those changes do not concern situations which are material to this case.

### C.

At the same time, the Board of Directors established guidelines for the plan administrative committee to use in making determinations of "competition." The board resolution stated as follows:

*Guidelines for Determining Competition*

WHEREAS, responsibility for determining whether a Participant or former Participant has engaged in competition with the Corporation has been delegated to the Administrative Committee; and

WHEREAS, the Corporation wishes to establish guidelines for the Administrative Committee of the Plan to follow in determining whether a Participant or former Participant has engaged in competition.

NOW, THEREFORE, BE IT RESOLVED, that the Corporation does hereby adopt the Administrative Committee Guidelines for Determining Competition in the form attached herewith as Exhibit A;

The guidelines themselves (Exhibit A to that resolution) are contained in four pages. They need not be quoted in full here. The general effect of the guidelines was to reduce the number of situations in which a former employee might lose his benefits because of his competition. The policy stated by the guidelines is to protect the plan and its participants, and the focal point is whether there has been an adverse impact on Source. The policy states, "if

there is no harm to the company or to the plan, they should not be considered to be competing." The guidelines then defined several situations in which a former employee might be deemed to be in competition under the language of the plan, but would not be found to be in competition by the administrative committee. Those circumstances included (1) considerations of geography; (2) how directly the former employee was involved in the making of placements; (3) a *de minimis* exception; and (4) a system for a former employee to determine ahead of time whether his anticipated activities might be competitive.

As stated, the overall effect was to reduce the number of situations in which an employee might be held to be competing with Source under the forfeiture and deferral provisions of the plan. This court also concludes that the guidelines did not either materially assist or hurt plaintiffs. That is, the facts of plaintiffs' business activities, and whether they constituted competition with Source, were not impacted by the guidelines. The guidelines do not need to be interpreted to determine whether plaintiffs were or were not in competition with Source.

#### D.

In September 1986 a summary plan description was issued (the "SPD"). The SPD contained an extensive discussion of the provisions for forfeiture because of competition, which also specifically referred to the guidelines. *See* SPD at ¶ 8(e). Those descriptions are roughly parallel to the non-competition provisions of the plan, as amended in August 1986, and to the guidelines adopted by the board that month.

That was the state of the plan's documents at the time plaintiffs left Source in late September 1986 and formed their own company. Defendants made later amendments to the plan and issued subsequent SPDs. But this court concludes that plaintiffs' rights must be determined by the state of the plan at the time they left the company in September 1986.[3]

By that date, plaintiffs had received a copy of the plan as amended through December 1985. The record is unclear whether they had received the August 1986 amendment or the September 1986 SPD by then. Plaintiffs allege that they did not receive the guidelines until after this litigation was filed.

#### IV.

■ Did defendants or Source violate the ERISA statutes or regulations by amending the definition of "competition" in 1986, or by adopting and using the guidelines?

Plaintiffs charge that defendants violated ERISA by failing to communicate material modifications to the participants in the plan. 29 U.S.C. § 1022(a)(1), § 1024(b)(1). For purposes of this discussion, the court will assume that the 1986 amendment and the adoption of the guidelines made material changes, although the court finds above that they did not.

Defendants were not required by the applicable regulations to provide a summary of the changes or the guideline criteria until July 1987. 29 C.F.R. § 2520.104b–3(b) provides that a summary of modifications need not be given to plan participants if they are timely incorporated into a summary plan description; and under the regulations, defendants had until July 1987 to provide the summary plan description. Further, even if the court were to find that a procedural violation occurred, there are no substantive remedies in the ERISA statutes for such violations. *Blau v. Del Monte Corporation*, 748 F.2d 1348, 1353 (9th Cir.1984). However, if a procedural violation rises to the point of "alter[ing] the very balance of knowledge and rights between covered employees and their employer" a court may find that a remediable harm has occurred. *Id.* The procedural violations in this case, assuming that there were violations, do not come close to those in *Blau*. Plaintiffs in this case, unlike *Blau*, knew of the existence of the plan,

---

**3.** Although the committee deciding plaintiffs' benefit claims used the 1988 SPD, the Independent Review Committee correctly applied the 1986 version.

and knew of the provisions against competition. The defendant in *Blau* had kept the very existence of the plan a secret from its employees. And the procedural violations in *Blau* were numerous, continuous, and pervasive. For instance, the defendant in *Blau* ignored the reporting, disclosure and fiduciary obligations of ERISA. Plaintiffs in this case do not assert a breach of fiduciary duty. The only reporting or disclosure violation asserted by plaintiffs relates to a summary of the terms of the guidelines.

Plaintiffs' procedural argument must also fail because the alleged procedural violations did not have any impact upon plaintiffs here. As stated, this court concludes that the 1986 amendment to the definition of "competition" did not make a material change insofar as plaintiffs' acts of alleged competition are concerned. And, as discussed above, the general effect of the guidelines was to liberalize the types of competition which would *not* result in forfeiture under the plan. Therefore, even if plaintiffs did not know of the guidelines through some fault of defendants, the application of the guidelines did not harm plaintiffs but instead expanded their scope of permissible competition.

■ Plaintiffs also argue that the guidelines vested too much discretion in the administrative committee. That is, plaintiffs were impacted by decisions of the committee when plaintiffs had no knowledge of the scope of its discretion. The discretion vested in the administrative committee by the guidelines was that "reasonably necessary to determine whether the objective conditions have been met." That discretion is consistent with the regulations. 26 C.F.R. § 1.411(d)–4, Q & A–6. In addition, plaintiffs had no rights that were defined as vested under ERISA. The plan granted them more benefits than ERISA required. *Clark v. Lauren Young Tire Center Profit Sharing Trust*, 816 F.2d at 481–82. The administration of non-required benefits is entitled to more discretion than if the benefits were compelled by the ERISA statutes

and regulations themselves. Further, the result of the discretion vested by the guidelines in the administrative committee was to liberalize the application of the non-competition clauses of the plan. That is, it was an exercise of discretion that operated to plaintiffs' benefit, and not to their detriment.[4]

Plaintiffs have made several other arguments about alleged violations of ERISA. However, those arguments are answered by the same basic points discussed above. First, the non-competition clause was contained in the plan, and was known to plaintiffs. Second, the non-competition clause, while broad, was valid and contained objective criteria. Third, any uncertainty created by the guidelines, any failure to disclose, and any exercise of discretion by the administrative committee only operated to liberalize the non-competition provisions in favor of plaintiffs.

## V.

■ Did the administrative committee correctly determine that plaintiffs engaged in competition with Source?

Plaintiffs contend that they did not compete sufficiently to justify the forfeiture or deferral of their benefits. And they argue that this is at least an issue of fact for the trier of fact.

This court reviews an administrative committee's denial of benefits under a *de novo* standard of review, unless the plan vests the administrator with discretionary authority to determine eligibility for benefits, or to conserve the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Defendants have not contended that the committee's discretion was so broad as to impose a more limited standard of review by this court. The court therefore reviews the committee's decision to deny plaintiffs' benefits under a *de novo* standard.

After review of the factual record submitted in support of and in opposition to the motion, this court concludes that there

---

**4.** Plaintiffs also argue that the administrative committee exercised its discretion in a discriminatory manner, which is discussed below.

is no genuine issue of material fact. And this is true whether the court uses the definition of "competition" in the 1985 plan, 1986 amendment, or the guidelines.

The fact of competition is established by plaintiffs' responses to the statements of undisputed fact Nos. 16–25(d), –27, –27(b), –27(c), –27(e), –28, –29, –32, and –33. Plaintiffs argue about differences in the methodology or business techniques between Source and plaintiffs' company. Those differences concern primarily whether the bases of their fees were retention or contingency, how much contingency business was involved, how much business was exclusive versus non-exclusive, how much was temporary versus permanent, and the salary levels of the potential employees. This court will accept, for purposes of this motion, plaintiffs' statements of those differing methodologies and business techniques, and that such differences impact how search firms view themselves and their markets. However, they do not eliminate the basic fact of competition. Both companies were engaged in the business of the placement of employees. Both went after the same customers and the same persons to be placed. And each tried to take business away from the other. That is the essence of competition. The administrative committee was correct in concluding that plaintiffs did compete with Source.

■ Plaintiffs also contend that there is a factual issue as to whether either Source or the plan was harmed by plaintiffs' competition. The policy stated in the guidelines focuses on competition that causes harm to the company or to the plan. The record does not contain a dollar quantification of the claimed harm to Source or to the plan. However, the *fact* of harm is inescapable from plaintiffs' responses to the statements of undisputed fact, cited above. Plaintiffs provided services to companies that had been customers of Source. Plaintiffs placed employees whom Source was also seeking to place. And plaintiffs hired some of Source's employees away from Source.

## VI.

■ Plaintiffs charge discrimination in the administration and application of the non-competition clause against plaintiffs *vis-a-vis* against other former Source employees.

Paragraph 16.2 of the plan prohibits discriminatory application of the non-competition provisions. Plaintiffs allege that other former employees of Source competed with Source during the three years following their terminations, but that defendants did not enforce the competition provisions against at least some of them.

As a result of discovery, plaintiffs identified fifteen former employees who they believe received more favorable interpretation than plaintiffs. In this motion, the number was further narrowed to three. (1) As to one of the three, the employee had two plans applicable to him because of a break in his service. The earlier plan benefits were deferred, and will be reviewed on the issue of competition when a three year time period expires. The benefits which he has accrued since returning to work at Source are being treated separately. There is therefore no evidence of discrimination. (2) The second former employee competed with Source for a year and a half, but returned to Source as an employee. He will not forfeit any benefits because of a provision in the plan regarding returning employees and a new five year vesting provision. (3) The third employee was one as to whom defendants had no knowledge of his alleged competition when the administrative committee determined that he was entitled to his benefits.

Even if defendants made an error in this final instance, it is insufficient to show actionable discrimination. The plan had 404 participants. And discovery and analysis have narrowed the issue of possible discrimination to only one person. This is insufficient to establish that the administrative committee has administered the non-competition clause in a discriminatory manner.

■ Plaintiffs also argue that they were denied a "predetermination" by defendants, and that this denial constituted discrimination. The plan contains predetermination procedures for establishing whether anticipated activities would be competitive. However, predetermination is not available

under the plan for activities which took place in the past. And plaintiffs did not request predetermination until August of 1988, two years after they began to compete with Source. Even if plaintiffs could establish, as they argue, that some employees were given predeterminations after they had begun *some* competitive activity, this does not establish discriminatory procedures or decisions by the administrative committee as to plaintiffs. By August of 1988 plaintiffs had already been engaged in competition for over two years, and their competition was substantial. Any predetermination as to the future would not reasonably have changed the consequences of plaintiffs' two years of then-existing competition.

Any other factual disputes which plaintiffs contend exist with respect to the application of the forfeiture provisions by the administrative committee do not rise to the level of genuine issues of material fact.

For the reasons stated, IT IS HEREBY ORDERED that summary judgment be entered in favor of defendants and against plaintiffs.