**Sondra BROWER, Plaintiff,**

**v.**

**COMARK MERCHANDISING, INC., Richard Krautsack, Kenneth O. McNerney, John Doe # 1 and John Doe # 2, Defendants.**

**Civ. No. 95–6131 (WHW).**

United States District Court,
D. New Jersey.

Dec. 10, 1996.

Jerrold D. Goldstein, Raymond T. Weicker, North Plainfield, NJ, for Plaintiff.

Keith N. Biebelberg, Lawrence M. Fox, Biebelberg & Martin, Millburn, NJ, for Defendants.

## AMENDED OPINION

WALLS, District Judge.

This matter arises on the motion of plaintiff Sondra Brower ("Brower") for summary judgment on her complaint against her former employer. Comark Merchandising, Inc. ("Comark") is a national supplier of in-store marketing and promotional systems. Richard Krautsack ("Krautsack") and Kenneth McNerney ("McNerney") were, at the time the acts at issue took place, administrators of Comark's employee benefit plan.[1] The defendants (collectively "Comark") file a cross-motion for summary judgment. The Court has jurisdiction pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1132 (West Supp. 1996).

### I.  Standard for Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to

---

1.  During all times relevant to this matter, Krautsack and McNerney served respectively as Co- mark's president and executive vice president. Krautsack continues to serve as president.

permit the non-moving party to carry its burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Sound Ship Building Co. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.

## II. *Background*

This action arises from Comark's refusal to release to Brower the vested portions of her 401(k) and rollover retirement accounts. Brower was employed at Comark from October 1986 through March 1990 as a sales and marketing manager.

During the course of her employment at Comark, Brower received money that she characterized as bonuses. However, Comark maintained that these payments were advances because Brower's profitability fell below the minimum standard required to receive bonuses. Brower had signed an agreement indicating her understanding that if her performance continued to be below standard, any payments she received would be considered advances which she would be obligated to repay if she left the company. Def.Exh. A.

On March 9, 1990, Brower resigned her position at Comark and accepted employment with a company deemed by Comark to be a competitor. Before leaving Comark, Brower requested that her account balances in the 401(k)/Profit Sharing Plan (the "plan") be turned over to her. Brower's plan account was subdivided into four accounts: (1) employee 401(k); (2) rollover; (3) profit sharing; and (4) employer match. Stipulation of 11/14/96, Exh. A. The monies she sought were those in the employee 401(k) account and rollover account. Those accounts were funded solely by Brower's contributions and the amount of money "rolled over" from her previous employer, plus interest and earnings.[2] See Stipulation at ¶¶ 9–11. By the terms of the plan, these funds were "fully vested at all times." Pl.Exh. F at 8. In a letter dated February 27, 1990, Comark's human resources department informed her that it would take eight to twelve weeks for her to receive the distribution check. Pl. Exh. B.

On March 15, 1990, following her resignation, Brower received a letter from McNerney. He stated that Brower was required to repay the company $8,632.53 of "advances" because her profitability had fallen below the level required to characterize them as bonuses. McNerney further declared:

> Comark expects you to leave your pension/401(k) funds invested with Connecticut General, as they currently are, to secure the amount currently due. You continue to earn interest, market gains or losses on those amounts in conjunction with these investments. Upon receipt of the total amount due, you are free to do whatever you would like with these funds.

Pl.Exh. D. He requested that Brower sign the letter to demonstrate her assent and agreement to its payment terms; however, there is no evidence in the record that she signed it.

---

**2.** Comark contributed amounts totaling $14,368.45 to Brower's profit-sharing and employer match accounts. This sum was removed from Brower's account upon her resignation from Co-mark because it had not vested by that time. No funds contributed by Comark remain in Brower's plan accounts. Stipulation of 11/14/96 at ¶ 9.

Despite repeated requests, Brower never received her vested benefits. In a letter dated July 12, 1996, Comark refused to release her 401(k) and rollover account funds (collectively, the "401(k) funds"). Pl.Exh. E. It relied upon a provision in the company plan that permitted Comark to deny early distribution of benefits if a former employee is "engaging in business activity competitive with the business of the Employer" but disavowed any intent to retain the funds as security for her debt.[3] *Id.;* Pl.Exh. F at 11.

### III. *Procedural History*

On March 5, 1993, Comark filed a complaint against Brower in state court, in which it sought repayment of the sums it alleged Brower owed. In her counterclaim against Comark, Brower argued that Comark was wrongfully withholding the 401(k) funds to secure repayment of her debt.

On October 31, 1995, the state court entered a final judgment for Comark in the total amount of $9,560.86, a sum which included prejudgment interest. Def.Exh. D. On that same day, the court issued an order granting leave to Brower to amend her counterclaim to allege that the terms of the plan violated ERISA. The court also severed her ERISA counterclaim because it determined that it lacked jurisdiction to hear it. Its order acknowledged:

> ... [T]he Defendant has preserved her rights to remove the amended claim to the United States District Court or in the alternative to file suit in the United States District Court, and nothing contained in this Order shall otherwise affect or prejudice the Defendants [sic] right to maintain such action in the United State [sic] District Court but the United States District Court must determine its jurisdiction[.]

Def.Exh. E.

On December 1, 1995, Brower filed an action in this Court asserting that Comark has wrongfully withheld her 401(k) funds and seeking their release. She now moves for summary judgment on her complaint and Comark cross-moves for summary judgment.

### IV. *Analysis*

In her moving papers, Brower makes four claims: (1) that Comark has restrained her 401(k) funds in contravention of ERISA; (2) that Comark has commingled her 401(k) funds in violation of ERISA, 29 U.S.C.A. § 1106 (West Supp.1996); (3) that Comark breached its fiduciary duty by allowing Brower's trust funds to be used for the benefit of Comark in violation of ERISA, 29 U.S.C.A. § 1103 (West Supp.1996); and (4) that Krautsack and McNerney, the plan administrators, are jointly and severally liable for the actions of one another.

Comark denies these allegations and asserts as an affirmative defense that Brower's action violates New Jersey's entire controversy doctrine.

### A. *Whether the Entire Controversy Doctrine Bars Brower's Claim.*

New Jersey's entire controversy doctrine is predicated on the notion that the adjudication of a legal controversy should occur in one litigation in only one court. *Esoldi v. Esoldi,* 930 F.Supp. 1015, 1025 (D.N.J.1996); *DiTrolio v. Antiles,* 142 N.J. 253, 267–68, 662 A.2d 494, 502 (1995). Thus, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy. *Id.* Accordingly, the doctrine prevents a plaintiff from litigating claims that were or could have been litigated in a prior proceeding and also bars claims against parties who should and could have been named in the prior proceedings. *Itzkoff v. F & G Realty of New Jersey,* 890 F.Supp. 351, 355 (D.N.J.1995); *Cogdell v. Hospital Ctr. at Orange,* 116 N.J. 7, 26, 560 A.2d 1169, 1178 (1989).

Comark argues that the present action is barred by the doctrine. There is no question that Brower raised her claims against Comark in the prior proceeding. Nevertheless, Comark asserts that Brower's failure to remove the entire state action to federal court, as was her right, precludes her from raising her ERISA claims now in a separate federal action. It cites in its favor

---

**3.** As of February 29, 1995, the value of these

accounts was $17,997.04. Stipulation at ¶ 10.

*Peduto v. City of North Wildwood,* 878 F.2d 725 (3d Cir.1989), in which an appellant who pursued both state and federal claims in state court and received an unfavorable judgment was later barred from reasserting the federal cause of action in federal court because of the entire controversy doctrine. *Id.* at 729. Comark also relies upon *Rodziewicz v. Beyer,* 809 F.Supp. 1164 (D.N.J.1992), in which a plaintiff who had appealed a prison disciplinary proceeding to a valid, final and unfavorable state appellate court judgment was precluded from bringing a substantially similar claim in federal court. *Id.* at 1170.

Comark's reliance on *Peduto* and *Rodziewicz* is unavailing because the facts of both cases are clearly distinguishable. Here, no judgment unfavorable to Brower on her counterclaims was reached by the state court because the court expressly declined to hear the counterclaims for lack of jurisdiction. Furthermore, Brower was specifically protected by the court order of October 31, 1996 which severed and preserved her federal claims. This is not a case in which Brower seeks a second bite of the apple.

The state court order permitted Brower to remove or refile her ERISA action in federal court and stated that nothing in the order would prejudice or affect her right to maintain the action. Brower neither seeks nor could be permitted to relitigate the issue of her debt to Comark which resulted in a judgment against her. Accordingly, the Court finds the entire controversy doctrine inapplicable to bar Brower's suit.

B. *Whether Comark is Unlawfully With-holding Brower's Benefits.*

The Court must determine whether Comark was entitled to defer release of Brower's benefits pursuant to the plan's non-competition clause. A non-competition forfeiture clause in an employee benefit plan provides for the forfeiture of accumulated benefits in the event that an employee leaves the company and takes a position with a competing company.

■ ERISA preempts state law with respect to non-competition forfeiture clauses. *Clark v. Lauren Young Tire Ctr. Profit Sharing Trust,* 816 F.2d 480, 481 (9th Cir. 1987). Accordingly, state law plays no part in assessing the validity of such a clause in an ERISA plan. *Id.*

■ Under federal law, a non-competition forfeiture clause is valid so long as the plan provides that benefits accrued after ten years of service cannot be forfeited. *Id.; Noell v. American Design, Inc.,* 764 F.2d 827, 830 (11th Cir.1985). No pension benefits at all are required for employees with less than ten years of service. *Clark,* 816 F.2d at 481. If an ERISA plan vests employees with pension benefits before their tenth year, the employer may condition the right to benefits on a non-competition requirement, even if it results in forfeiture of benefits. *Id.; Noell,* 764 F.2d at 831. The administration of non-required benefits is entitled to more discretion than if the benefits were compelled by the ERISA statutes and regulations themselves. *Weinfurther v. Source Serv. Employees Profit Sharing Plan and Trust,* 759 F.Supp. 599, 604 (N.D.Cal. 1991).

■ Brower was employed by Comark for less than four years. Therefore, she is not eligible for the ten year automatic non-forfeitable vesting provided by ERISA. However, it is uncontroverted that the 401(k) funds are comprised solely of her contributions and that they have in fact vested. It is established that employers may condition the right to benefits which are vested in excess of ERISA's minimum requirements to a non-competition requirement. The question is then whether the non-competition clause is enforceable and applicable to these vested portions of her account, derived completely from her contributions.

Comark's Summary Plan Description has the following provision.

As soon as administratively possible after your employment terminates, you may request to have your entire account balances paid to you in a single payment. However, the Plan Administrator will not make an early distribution, but will delay the distribution of your benefits until the end of the Plan Year in which you attain age 65 if you

are engaging in business activity competitive with the business of the Employer[.] Pl.Exh. F.[4]

Comark, in its letter of July 12, 1990, denied Brower the release of her 401(k) funds pursuant to this provision. It relied upon Treasury Regulation 1.411(d)–4 Q & A 6(a)(2) to support its decision. Brower attacks the sufficiency of the non-competition provision by invoking the standards set forth in that regulation.

The regulation provides:

Q–6 May a plan condition the availability of a section 411(d)(6) protected benefit on the satisfaction of objective conditions that are specifically set forth in the plan?

A–6 (a)(1) The availability of a section 411(d)(6) protected benefit may be limited to employees who satisfy certain objective conditions provided the conditions are ascertainable, clearly set forth in the plan and not subject to the employer's discretion except to the extent reasonably necessary to determine whether the objective conditions have been met.... (2) ... Examples of permissible objective conditions: ... a plan may condition the availability of a single sum distribution on the execution of a covenant not to compete, provided that objective conditions with respect to the terms of such covenant and the employees and circumstances requiring execution of such covenant are set forth in the plan.

26 C.F.R. § 1.411(d)–4, Q & A 6.

■■■■ As Comark points out, however, this regulation is designed to explicate 26 U.S.C.A. § 411(d)(6) (West Supp.1996) of the Internal Revenue Code (IRC). Section 411(d)(6) is the mirror image of ERISA's 29 U.S.C.A. § 1054(g)(2) (West Supp.1996)— both prohibit the decrease of an accrued benefit of a participant under a plan by an amendment of the plan, except under certain conditions not relevant here.[5] 29 U.S.C.A. § 1054(g)(2); 26 U.S.C.A. § 411(d)(6).

Brower does not contend that her former employer engaged in a wrongful decrease of her accrued benefits by any amendment of its plan. Nor does the Court hold she could. Comark's predecessor, the Cooperative Marketing Co., instituted a "salaried employees profit sharing plan" on March 1, 1984. Brower was hired during the life of the 1984 plan. That plan contained a clause which provided that "[t]he Plan Administrator may refuse to make an early distribution of Accounts because of the Participant's engaging in business activity competitive with the business of the Employer." Def.Exh. I at 40.

Comark was, to use its phrase, "spun off" of Cooperative Marketing in 1987. It began its own 401(k)/Profit Sharing Plan which it "amended and restated" in 1988. Def.Exh. J. Notwithstanding this language, the Court does not find this to have been a complete amendment because the non-competition forfeiture provision was left substantially in place:

[T]he Plan Administrator will delay the distribution of your benefits until the end of the Plan Year in which you attain age 65 if you are engaging in business activity competitive with the business of the Employer.

*Id.* at 11.

There was no material change in the provision. Nor does the Court find that it worked a reduction in Brower's benefits. The provision merely defers the availability of those benefits in the event that the employee takes competitive employment. Therefore, this provision does not violate section 1054(g).

Because there is no violation of section 1054(g) and its IRC counterpart, section 411(d), the Court finds the above regulation inapplicable to determine the validity of the non-competition clause. Accordingly, Co-

4. Brower does not allege that she did not have notice of this provision. Therefore, the Court need not consider the issue.

5. Many sections of the Internal Revenue Code mirror provisions of ERISA. Therefore, when interpreting sections of ERISA, it is instructive to look for guidance to sources which interpret its

IRC counterpart. Congress's purpose in creating this congruence is to provide favorable tax treatment for plans which comply with ERISA's requirements in order to encourage employers to establish pension plans. *Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137, 1144 n. 6 (3d Cir.1993).

mark's reliance upon it to justify withholding Brower's account is misplaced.[6]

■ Nevertheless, the Court may examine the sufficiency of the provision in light of the body of case law which has considered the validity of non-competition provisions in ERISA plans. As a preliminary matter, Brower's argument that the non-competition clause would not apply to her because she never executed a "covenant not to compete" is incorrect. Most courts have upheld non-competition clauses when found in the summary plan description. The Court's research has not yielded any case where a signed and executed covenant was deemed a prerequisite to enforcement. In fact, at least one court has upheld a denial of benefits based upon an uncommunicated non-competition policy of plan trustees rather than a written provision. *Morse v. Stanley*, 732 F.2d 1139, 1147 (2d Cir.1984). Accordingly, this Court does not require that Brower actually have executed a written covenant not to compete. It finds such an agreement to the terms of the summary plan description implied by her participation in the plan.

Next, Brower contends that the non-competition clause is insufficiently specific as to its terms and requirements. She also asserts that the plan is too open-ended as to when the violation of the "conditions" occurs and vests the administrators with too much discretion in making that determination. Indeed, the plan makes no provision for temporal or geographical limitations on the covenant not to compete.

It must be noted at the outset that Comark's provision did not require Brower to completely forfeit her benefits. Rather, it deferred payment until she reached age 65. With regard to the lack of objective standards, most courts which have addressed similar factual situations have upheld the validity of non-competition clauses that provide for deferral of benefits, or in a directly analogous situation, the denial of lump sum distribution of benefits. *See Severs v. Al-*

*lied Constr. Serv., Inc.*, 795 F.2d 649 (8th Cir.1986) (holding that nothing in ERISA prevented the plan committee from conditioning a lump sum distribution of benefits pursuant to a profit-sharing plan on execution of a covenant not to compete); *Morse,* 732 F.2d at 1145 (upholding denial of accelerated benefits from a profit sharing plan funded entirely by employer contributions even in absence of written policy where plaintiffs' vested benefits were to be deferred until normal retirement age); *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d 911 (2d Cir.) (upholding denial of lump sum payment of benefits from a profit-sharing plan by committee because no absolute right under the plan to the specific mode of payment is required), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). *Watts v. Wikoff Color Corp.,* 543 F.Supp. 493, 495 (N.D.Tex.1981) (upholding validity of provision disallowing right to receive pension benefits in lump sum from an employer contribution account as to former employee determined to be in competition because ERISA does not guarantee any right to immediate payment of any pre-retirement benefits upon withdrawal), *aff'd,* 683 F.2d 416 (5th Cir.1982).

However, the Court finds these cases distinguishable for the simple reason that they neither contemplated nor involved a situation in which the contested funds were comprised solely of the employee's pre-tax contributions. In every case, the benefits at issue consisted of employer contributions. The Court has found no authority for the proposition that non-competition forfeiture or deferral clauses may be used to support a refusal to release accounts in which the vested amounts are derived entirely from the employee's contributions.

In such a circumstance, the policies justifying a non-competition clause are not as strong as when the contested benefits derive from the employer's contributions to the plan. Where the employer provides a benefit to an employee, it does so to engender

---

**6.** The Court notes the inconsistency of Comark's position. In its letter of July 10, 1990, Comark invokes the regulation to support the use of its non-competition provision to defer release of Brower's benefits. However, it strenuously argues in its moving papers that Brower may not attack the sufficiency of the provision by making reference to the standards set forth in the regulation because there was no amendment of the plan pursuant to 26 U.S.C.A. § 411(d)(6).

loyalty on the part of the employee and offer incentives for the employee to remain. In this context, a non-competition deferral clause furthers the interests of the employer in keeping a valued employee with the company and saving the company the expense of retraining a new employee. Non-competition clauses also advance the company's interest in discouraging employees from leaving and taking with them valuable experience and even clients which could benefit a competitor at the employer's expense. When benefits are provided solely by the employer, it is fair to hold an employee to a non-competition deferral clause because such clauses protect the company, its assets and profits, and consequently its employees through the benefit plan.

But where the funds are entirely made up of employee contributions, these policies do not resonate as loudly. In that instance, the employer is merely providing a service to its employees to save and invest money they have already earned; it has no real claim to the funds. It is their—the employees'—money. In Brower's case, her 401(k) and rollover funds were always vested. The plan allows that withdrawal of vested account balances during employment is subject to a hardship provision, but there is no similar provision for post-termination withdrawals.

Although Comark's non-competition clause provides for the deferral of benefits under the Plan, the Court construes such "benefits" to refer only to those vested benefits which consist of employer-funded contributions. Such a reading better effectuates the expectations of the parties and the policies behind the non-competition clause.

The Court finds as a matter of law that Comark's non-competition deferral clause does not apply to vested plan account balances that are entirely composed of employee contributions. Therefore, the Court holds that the vested proceeds of Brower's employee 401(k) and rollover accounts have been unlawfully restrained.

C. *Whether the Actions of Comark's Officer, McNerney and Krautsack, Amounted to a Breach of Their Fiduciary Duty to Brower.*

Brower also contends that McNerney violated his fiduciary duty to her as administrator of the plan and that Krautsack, as co-administrator, is jointly and severally liable for McNerney's wrongful acts. She argues that they unlawfully used her plan account to secure her debt and that such action constituted commingling of her trust funds in violation of ERISA as well as a breach of fiduciary duty to act in her interest.

Brower relies upon 29 U.S.C.A. § 1106, which sets forth the standard of conduct for trustees of ERISA plans. In pertinent part, it states:

(a) Transactions between plan and party in interest . . .

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect: . . .

(B) lending of money or other extension of credit between the plan and a party in interest . . .

(C) furnishing of goods, services, or facilities between the plan and a party in interest; and

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

29 U.S.C.A. § 1106.

Comark, in its letter to Brower of July 10, expressly bottomed its refusal to release her funds upon the regulation at 26 C.F.R. § 1.411(d)–4 Q & A 6. It denied any intention to retain those funds as security for her debt by stating that the debt was a "separate issue" and that "Comark cannot and does not expect you to leave your 401(k)/Profit Sharing account balances invested with CIGNA to secure the amount due." Nor could Comark legally undertake such an action. *See* N.J.S.A. 25:2–1(b).

This letter represents a retreat from an earlier letter from Comark of March 15, 1990, which declared, "Comark expects you to leave your pension/401(k) funds invested with Connecticut General, as they currently are, to secure the amount currently due. . . .

Upon receipt of the total amount due, you are free to do whatever you would like with these funds."

The Court is not persuaded by Comark's self-serving interpretation of this letter as merely expressing its "expectation" that Brower would do the morally correct thing by leaving her funds invested as security. Rather, the Court agrees with Brower that the letter and Comark's request that Brower sign it evidence Comark's intent at that time to restrain her pension funds to secure the debt.

The Court, however, finds no violation of 29 U.S.C.A. § 1106(a). Although the March letter arguably reflects an intent to "use" the 401(k) funds for the benefit of Comark by securing Brower's debt, there is no evidence that this actually happened. The letter was never signed by Brower; consequently there was no agreement to the terms for repayment of the debt, including the proposed use of the 401(k) funds as security. Comark's request for Brower's signature demonstrates that it sought to make any obligation a binding one. This evidences Comark's belief that in the absence of Brower's agreement, Comark could not use the funds for security, as desired. In short, there was no agreement between the parties and without one, Comark could not enforce the security provision. Additionally, Comark thereafter unequivocally repudiated any intent or ability to use the 401(k) funds as security.

■ Brower also asserts that McNerney breached his fiduciary duty by allowing her trust funds to be used for the "benefit" of Comark in violation of 29 U.S.C.A. § 1103, which provides for an establishment of trust under ERISA. Section 1103 forbids "the assets of a plan [to] inure to the benefit of any employer" and mandates that they "be held for the exclusive purposes of providing benefits to participants in the plan." 29 U.S.C.A. § 1103(c)(1).

Brower argues that Comark violated this provision by using her 401(k) funds to secure her debt. The Court, for the reasons already stated, finds no evidence to support this claim. Accordingly, there is no violation of section 1103.

■ Lastly, Brower alleges that McNerney's service as plan administrator as well as executive vice president of Comark gives rise to a conflict of interest between him, as fiduciary, and the plan beneficiaries. She relies upon 29 U.S.C.A. § 1106(b), in pertinent part:

> Transactions between plan and fiduciary. A fiduciary with respect to a plan shall not
>
> (1) deal with the assets of the plan in his own interest or for his own account;
>
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries[.]

29 U.S.C.A. § 1106(b).

However, her argument is negated by the clear language of section 1108 of Title 29, in pertinent part:

> Exemptions from prohibited transactions—
>
> (c) Fiduciary benefits and compensation not prohibited by section 1106—
>
> Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from— . . .
>
> (3) serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest.

29 U.S.C.A. § 1108(c) (West Supp.1996). *See also Morse,* 732 F.2d at 1146 ("Nor do we view with a jaundiced eye the fact that the Plan Trustees were also members of Bowne's senior management. Officers of a corporation often are trustees of its benefit plan.") Accordingly, there is no *per se* breach of fiduciary duty because of McNerney's dual status as officer and administrator.

Therefore, the Court holds as a matter of law that Comark, Krautsack and McNerney did not violate any fiduciary duty to Brower in the administration of her funds.

## V. *Conclusion*

For the aforementioned reasons, the Court holds that Brower is entitled to the turnover

of her 401(k) and rollover account funds but may not recover for any alleged breach of fiduciary duty. Accordingly, it grants in part and denies in part Brower's motion for summary judgment and denies in part and grants in part Comark's cross-motion for summary judgment.

**SO ORDERED**