# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1986

_____

Carlisle Power Transmission Products, Inc., formerly known as Carlisle
Engineered Transportation Solutions, formerly known as Carlisle Power
Transmission Products, Inc.,

*Plaintiff - Appellee,*

v.

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied
Industrial and Service Workers International Union, Local Union No. 662,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: January 15, 2013
Filed: August 5, 2013

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This appeal arises from a dispute between United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International
Union, Local Union No. 662 ("the Union") and Carlisle Power Transmission

Products, Inc. ("Carlisle") over the arbitrability of a grievance concerning disability benefits. Carlisle sought a declaratory judgment that the Union's grievance on behalf of former Carlisle employee Gary Mincks is not subject to arbitration. The court granted summary judgment for Carlisle and denied the Union's cross-motion for summary judgment. Because Carlisle's claim for declaratory judgment is barred by the doctrine of *res judicata*, we vacate the district court's order and remand with directions to dismiss Carlisle's action.

The Union represents a bargaining unit of approximately 300 employees at Carlisle's manufacturing facility in Springfield, Missouri. The Union and Carlisle are parties to a series of collective bargaining agreements ("CBAs"). The events leading to the dispute in this case occurred under a 2001 CBA that was in effect from April 1, 2001, through March 31, 2006. The 2001 CBA outlines the "exclusive means for the disposition of" a grievance, which it defines as "a difference or a dispute arising during the term of this Agreement between the Company and an employee or employees as to the meaning, interpretation or application of the express provisions of this Agreement." Under these grievance procedures, "the Union may request final and binding arbitration" of an unresolved grievance.

A Group Benefits Program Plan Description, which is incorporated into the 2001 CBA, summarizes the long-term disability benefits available to bargaining-unit employees at Carlisle. The Plan Description identifies Aetna Life Insurance Company as the administrator for these benefits, and outlines the process by which an employee may appeal a denial of a claim for benefits. Aetna's Long Term Disability Plan details Aetna's procedures for the appeal of a denied claim and informs an employee of his ability under the Employee Retirement Income Security Act of 1974 to "file suit in a state or federal court" if his claim for benefits "is denied or ignored, in whole or in part."

This appeal concerns a grievance the Union filed on behalf of former Carlisle employee Gary Mincks. Mincks worked at the Springfield manufacturing facility and was a member of the bargaining unit. Mincks suffered an on-the-job injury in September 2003 and stopped working for Carlisle after November 1, 2003. Pursuant to the 2001 CBA, Mincks was laid off in May 2004. Mincks filed a claim for long-term disability benefits under the Aetna Plan, which Aetna awarded him, effective April 30, 2004. Mincks also applied for Social Security Disability Income benefits, and the agency awarded him benefits, effective April 1, 2004.

Aetna advised Mincks on July 1, 2005, that his long-term disability benefits would be offset by the social security benefits, which Aetna concluded were "other income" under the Aetna Plan. Because Aetna already had awarded long-term disability benefits to Mincks for a period in which he also received social security benefits, Aetna demanded reimbursement of the overpayment. Mincks unsuccessfully appealed Aetna's decision, and he ultimately reimbursed Aetna in March 2006.

In accordance with the 2001 CBA grievance procedures, the Union then filed a written grievance on Mincks's behalf on March 23, 2006. The Union asserted that Mincks "should not have his [long-term disability] benefits reduced or offset by other income that is not a result of the same disability for which the plan is paying a benefit," and requested that Mincks be "made whole." Carlisle rejected Mincks's position and determined that the long-term disability benefit should be offset by Mincks's other income. The company also asserted that the Mincks grievance was not arbitrable, because it arose during the term of the 2001 CBA, which expired on April 1, 2006. The parties then agreed to submit to a neutral arbitrator the procedural issue whether the Mincks grievance was arbitrable under the terms of a new CBA that took effect in 2006.

The arbitrator found that the Mincks grievance was arbitrable under the 2006 CBA, even though it arose under the expired 2001 CBA. Carlisle sued in federal

court, seeking to vacate this 2007 arbitration award. The district court granted the Union's motion for summary judgment and entered an order to enforce the arbitration award. *Carlisle Power Transmission Prods., Inc. v. United Steel Workers of Am.*, No. 07-cv-03366-ODS, 2008 WL 2787985 (W.D. Mo. July 16, 2008). Carlisle appealed, and this court affirmed. *Carlisle Power Transmission Prods., Inc. v. United Steelworkers of Am.*, 326 F. App'x 402 (8th Cir. 2009) (per curiam).

Carlisle and the Union next selected an arbitrator and scheduled the Mincks grievance arbitration hearing for December 16, 2010. But on December 8, 2010, Carlisle sent written notice to the Union that Carlisle would not proceed with arbitration. Carlisle asserted that "the grievance is not arbitrable under the [2006] CBA because the grievance is solely seeking long term disability benefits and such benefits are exclusively controlled by the terms of the applicable Long Term Disability Plan." Carlisle sought a declaratory judgment to that effect in the district court, and moved for summary judgment on its claim. The Union also moved for summary judgment, arguing that Carlisle's claim was barred by the doctrine of *res judicata* and by the applicable statute of limitations.

The district court denied the Union's motion and granted summary judgment for Carlisle. While the district court concluded that all the requirements of the doctrine of *res judicata* were met, the court ruled that the Union had waived its right to raise the defense of *res judicata*. Proceeding to the merits, the district court determined that the 2006 CBA grievance procedures excluded disputes concerning long-term disability benefits. The court concluded that Carlisle was entitled to a declaratory judgment because the Mincks grievance "is not subject to arbitration under Carlisle's and United Steel's collective bargaining agreement." The Union appeals the district court's order granting summary judgment for Carlisle. We review the decision *de novo. First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 767 (8th Cir. 2012); *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

The doctrine of *res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). For *res judicata* to apply, there must be: (1) a final judgment on the merits that is, (2) based on proper jurisdiction, (3) between the same parties or their privies, and (4) based on the same claims or causes of action. *Wintermute v. Kan. Bankers Sur. Co.*, 630 F.3d 1063, 1067 (8th Cir. 2011).

The parties do not dispute that the 2007 arbitration decision was based on proper jurisdiction and that both cases involved the same parties. The 2007 arbitration decision constituted a final judgment on the merits, because the arbitrator decided the sole legal issue presented—whether the grievance was subject to arbitration under the 2006 CBA. *See Val-U Constr. Co. of S.D. v. Rosebud Sioux Tribe*, 146 F.3d 573, 581 (8th Cir. 1998). And Carlisle's 2010 declaratory judgment claim and the 2007 arbitration arose out of the same nucleus of operative facts, and thus the same cause of action. *See Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004). Even though Carlisle advanced different legal theories in the two cases for why the grievance is not arbitrable, the cause of action is the same. *Friez v. First Am. Bank & Trust of Minot*, 324 F.3d 580, 581 (8th Cir. 2003) (per curiam); *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446, 450 (8th Cir. 1979). The 2007 arbitration and Carlisle's declaratory judgment action both address whether the Mincks grievance is arbitrable under the terms of the parties' 2006 CBA. Indeed, the district court stated correctly: "If we were to stop here, res judicata would be applicable."

But the district court then found that the Union had waived its right to rely on the doctrine of *res judicata* "by agreeing to specifically limit the procedural issue before the arbitrator" in 2007. The district court's conclusion was based on an exception to the doctrine of *res judicata* recognized in the Restatement of Judgments: If a defendant seeking to invoke *res judicata* previously agreed that the

plaintiff could split its claim and proceed in two different actions, or acquiesced therein, then *res judicata* does not foreclose a second action. *See* Restatement (Second) of Judgments § 26(1)(a) and cmt. a (1982). The district court relied on *Dodd v. Hood River County*, 59 F.3d 852 (9th Cir. 1995), where the Ninth Circuit concluded that the claim-splitting exception allowed plaintiffs to pursue different actions simultaneously against the same defendants in state and federal court. *Id.* at 862. The *Dodd* court ruled that the defendants implicitly consented to claim-splitting by failing to object when the plaintiffs *expressly reserved* the right in state court to raise constitutional claims in the simultaneous federal litigation. *Id.*

In this case, however, the Union neither agreed to allow claim-splitting nor acquiesced therein. The Union agreed only to defer a determination on the merits of the Mincks grievance pending the 2007 arbitration decision on the question whether the grievance was subject to arbitration under the 2006 CBA. Carlisle's current theory—that the Mincks grievance is not arbitrable because it pertains to long-term disability benefits—could have been raised in response to the Mincks grievance in 2006. But Carlisle did not raise this theory in responding to the Mincks grievance in 2006, in the 2007 arbitration, or in its motion to vacate the arbitration award. Carlisle never reserved the right to raise this new challenge to arbitrability in a later proceeding. The company first broached the issue in December 2010. There is thus no basis to say that the Union acquiesced in the splitting of Carlisle's claims by agreeing to submit a different issue to arbitration in 2007. The district court should have granted summary judgment for the Union rather than for Carlisle.

\* \* \*

For the foregoing reasons, we vacate the district court's order and remand with directions to dismiss Carlisle's complaint.

_____