Millennium Laboratories, Inc., et al., appellants,
v. Brian Ward, an individual, appellee.
___ N.W.2d ___

Filed December 19, 2014.    No. S-13-826.

1. **Res Judicata: Appeal and Error.** The applicability of the doctrine of res judi-
   cata is a question of law, as to which an appellate court is obligated to reach a
   conclusion independent of the determination reached by the court below.
2. **Res Judicata: Collateral Estoppel.** The applicability of claim and issue preclu-
   sion is a question of law.
3. **Pleadings: Appeal and Error.** An appellate court reviews de novo a lower
   court's dismissal of a complaint for failure to state a claim.
4. **Jurisdiction: Appeal and Error.** Generally, once an appeal has been perfected,
   the trial court no longer has jurisdiction.
5. **Res Judicata: Judgments.** The doctrine of res judicata provides that a final
   judgment on the merits of an action precludes the parties or their privies from
   relitigating issues that were or could have been raised in that action.
6. **Res Judicata.** For res judicata to apply, there must be (1) a final judgment on the
   merits that is, (2) based on proper jurisdiction, (3) between the same parties or
   their privies, and (4) based on the same claims or causes of action.
7. **Appeal and Error.** An appellate court is not obligated to engage in an analysis
   that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Sarpy County: William
B. Zastera, Judge. Reversed and remanded for further
proceedings.

James P. Fitzgerald and Patrick E. Brookhouser, Jr., of
McGrath, North, Mullin & Kratz, P.C., L.L.O., and Lance A.
Etcheverry and Jessica N. Walker, of Skadden, Arps, Slate,
Meagher & Flom, L.L.P., for appellants.

Michael T. Hilgers and Carrie S. Dolton, of Gober Hilgers,
P.L.L.C., and Heather A. Boice and Michael R. Osterhoff, of
Perkins Coie, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

Wright, J.
## I. NATURE OF CASE
In 2013, as part of ongoing litigation between Ameritox,
Ltd., and Millennium Laboratories, Inc. (Millennium), a U.S.
district court in Florida (Florida court) denied Millennium's

motion for leave to amend its second amended counter-claims to Ameritox's third amended complaint. Subsequently, Millennium and two of its employees sued Brian Ward, one of Ameritox's employees, in the district court for Sarpy County, Nebraska (district court). Ward moved to dismiss for failure to state a claim. He specifically alleged that the complaint against him was barred under the doctrine of res judicata, or claim preclusion.

The district court determined that the Florida court's denial of Millennium's motion to amend its counterclaims barred the claims against Ward filed in Nebraska and sustained Ward's motion to dismiss. Because we find that the district court erred in concluding that the Florida court's order denying leave to amend barred the action against Ward, we reverse the judgment of the district court and remand the cause for further proceedings.

## II. SCOPE OF REVIEW

[1] The applicability of the doctrine of res judicata is a question of law, as to which we are obligated to reach a conclusion independent of the determination reached by the court below. *In re Interest of D.H.*, 281 Neb. 554, 797 N.W.2d 263 (2011).

[2] The applicability of claim and issue preclusion is a question of law. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

[3] An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007).

## III. FACTS

### 1. Parties

Millennium is a California corporation with its principal place of business in that state. It provides urine and saliva testing services to physicians and other health care professionals. Amos Burdine and Jackson Benefield are employed as sales representatives for Millennium in Nebraska and Iowa. Burdine and Benefield are residents of Nebraska and Iowa, respectively.

Ameritox provides similar services and is in direct competition with Millennium. Ameritox is a Texas limited partnership with its principal place of business in Maryland. Ward, a Nebraska resident, is employed as a sales representative for Ameritox in Nebraska.

## 2. FLORIDA LITIGATION

In 2011, Ameritox sued Millennium in the Florida court. The record does not tell us the nature of Ameritox's claims against Millennium. In August 2012, Millennium filed its second amended counterclaims in response to Ameritox's third amended complaint. Millennium raised counterclaims under state unfair trade practices laws in Florida, California, Texas, and New York; common-law unfair competition; and common-law tortious interference with business relationships.

As part of its counterclaims, Millennium alleged that Ameritox had "engaged in unlawful schemes designed to maintain and enlarge its business . . . at the expense of Millennium and the American public." It alleged that Ameritox did the following to gain customers and increase its sales:

• Encouraged health care providers using Ameritox's services to order medically unnecessary tests and panels of tests rather than individual tests so as to maximize insurance payments;
• Placed Ameritox employees in the offices of health care providers as specimen collectors or processors on the condition that the health care providers would submit a certain number of tests to Ameritox; and
• Offered improper financial inducements and kickbacks in exchange for referrals.

After the Florida court's deadline for amending pleadings, Millennium moved for leave to amend its second amended counterclaims to Ameritox's third amended complaint. Millennium's proposed third amended counterclaims alleged that Ameritox engaged in deceptive trade practices through the same general conduct alleged in Millennium's second amended counterclaims. The proposed third amended counterclaims added allegations that Ameritox disseminated false and misleading statements to "health care providers across

the country" on the subjects of (1) the federal investigation of Millennium in Massachusetts, (2) the legality of Ameritox's kickbacks and financial inducements, (3) the propriety of making testing recommendations based on insurance coverage, and (4) the in-network status of insurance providers.

As "proof of Ameritox's false and misleading statements," Millennium's proposed third amended counterclaims described actions taken by Ward:

In or around November 2012, . . . Ward, an Ameritox sales representative in Nebraska and Iowa (among other states), visited a Millennium customer located in Iowa, and sought to convince it to stop doing business with Millennium and to refer future business to Ameritox. In making his sales pitch, Ward provided Millennium's customer with . . . a document that made a series of false and misleading statements about the Massachusetts Investigation.

. . . .

. . . Ameritox has widely disseminated the foregoing false and misleading representations, and statements similar to them, to a substantial portion of health care providers nationwide.

The proposed third amended counterclaims described one other example of the ways in which Ameritox disseminated false information about Millennium, but this second example did not involve Ward.

Based on these new factual allegations, Millennium proposed to add a counterclaim against Ameritox under the Lanham Act, 15 U.S.C. § 1051 et seq. (2012). It also sought to add new counterclaims based on unfair trade practices laws in Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New Mexico, Nevada, North Carolina, South Carolina, and Washington and to remove the counterclaims relating to Texas state law. All of the new state law counterclaims that Millennium sought to add were based on conduct relating to the provision of kickbacks and improper financial inducements.

The Florida court overruled Millennium's motion for leave to amend its second amended counterclaims, because the

motion was filed after the deadline to amend pleadings and Millennium had not shown good cause to set aside that deadline. The record does not contain any information about the Florida litigation following the denial of Millennium's motion for leave to amend.

### 3. Current Lawsuit

On February 27, 2013, Millennium, Burdine, and Benefield (collectively appellants) sued Ward in the district court for tortious interference with prospective economic relations, violations of Nebraska's Uniform Deceptive Trade Practices Act and Consumer Protection Act, slander, and libel. They alleged that Ward had "engaged in a scheme of illegal and deceptive sales practices" and disseminated "false and misleading statements . . . among Millennium's current and potential customers" in both oral and written form.

As a "specific example" of Ward's conduct, appellants alleged that

> in or around November 2012, . . . Ward entered a health clinic in Iowa that was a Millennium customer and sought to convince the clinic to drop Millennium as a service provider and to refer future business to Ameritox. . . . Ward sought to mislead the clinic regarding an investigation by the United States Attorney's Office in the District of Massachusetts . . . . In addition to making untruthful oral statements, Ward provided the clinic with a type-written document that contained a series of false and misleading statements about the Massachusetts Investigation.

Appellants alleged that Ward made similar oral and written statements to health care providers throughout Nebraska and Iowa with the intent of inducing such providers to become Ameritox customers and that as a result, appellants lost business and "suffered other damages and irreparable injury, to . . . their reputations and goodwill."

Ward moved to dismiss appellants' complaint for failure to state a claim and for failure to join a necessary party. He alleged that the claims were "barred under the doctrines of res judicata, collateral estoppel, judicial estoppel, and/or

issue preclusion." Ward's motion to dismiss did not identify which prior action would have preclusive effect. The brief in support of his motion to dismiss included as attachments Millennium's proposed third amended counterclaims in the Florida litigation and the Florida court's order that denied leave to amend.

The district court determined that res judicata applied to bar appellants' complaint, because (1) the Florida court's order denying leave to amend "constitute[d] a final judgment on the merits," (2) the Florida court had jurisdiction to rule on Millennium's motion for leave to amend, (3) the instant case involved "the same parties (or those in privity with them)" as the Florida litigation, and (4) appellants' complaint "[arose] out of the same nucleus of operative facts as the amendments Millennium sought to include in the Florida Litigation." (Emphasis in original.) It concluded that the Florida court's order denying leave to amend "has a res judicata effect and bars [appellants] from suing Ameritox, or . . . Ward, on the same set of operative facts." It dismissed appellants' complaint with prejudice.

Appellants timely appealed to the Nebraska Court of Appeals. After the appeal was filed, Ward filed a motion with the district court to amend the bill of exceptions to include Millennium's proposed third amended counterclaims and the Florida court's order denying leave to amend. The district court sustained the motion. Thereafter, we moved the appeal to our docket. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

In April 2014, a supplemental transcript and amended bill of exceptions were filed with the Clerk of the Nebraska Supreme Court. The supplemental transcript included Millennium's proposed third amended counterclaims and the Florida court's order that denied leave to amend. These documents were also included in the amended bill of exceptions as exhibits to the hearing on Ward's motion to amend.

## IV. ASSIGNMENTS OF ERROR

Appellants assign, summarized and restated, that the district court erred in (1) relying on documents not entered into the record, (2) finding that the Florida court's order denying

leave to amend constituted a final judgment on the merits of the claims in this action, and (3) granting Ward's motion to dismiss.

## V. ANALYSIS

### 1. APPELLATE RECORD

We first examine what is included in the record before this court. After appellants perfected their appeal, Ward filed a motion in the district court to amend the bill of exceptions. While the appeal was still pending, the district court held a hearing and sustained the motion. The clerk of the district court prepared and filed an amended bill of exceptions and a supplemental transcript. Appellants claim that these additions to the appellate record are not properly before us. We do not agree.

#### (a) Amended Bill of Exceptions

[4] "[G]enerally, once an appeal has been perfected, the trial court no longer has jurisdiction." *Spady v. Spady*, 284 Neb. 885, 895, 824 N.W.2d 366, 374 (2012). However, under Neb. Ct. R. App. P. § 2-105(B)(5) (rev. 2010), a district court has the authority to order amendments to the bill of exceptions in an appeal that has already been perfected. Section 2-105(B)(5) allows the bill of exceptions in an appeal to be amended by agreement of the parties so long as that agreement is "attached to the bill of exceptions at any time prior to the time the case is submitted to the Supreme Court." In the case of disagreement between the parties, the bill of exceptions can be amended by order of the district court, provided that the order is "attached to the bill of exceptions prior to the time the case is submitted to the Supreme Court." See *id*. Neb. Ct. R. App. P. § 2-111(A) (rev. 2014) states that a case is "eligible for submission at any time after the appellee's brief has been filed." Submission can be accomplished in one of two ways: oral argument or submission without oral argument. See § 2-111(B).

At the time Ward filed his motion to amend the bill of exceptions, the instant appeal had not been submitted to

this court. Therefore, under § 2-105(B)(5), the district court could hear the motion and order that the bill of exceptions be amended. When the amended bill of exceptions was filed with and accepted by this court, it became part of the appellate record.

### (b) Supplemental Transcript

Under Neb. Ct. R. App. P. § 2-104(C), a party may request a supplemental transcript "without leave of court" and file it with this court at any time "prior to the day the case is submitted to the court." The supplemental transcript in the instant case was filed prior to submission. As such, it is properly before us on appeal.

### (c) Conclusion as to
### Appellate Record

The amended bill of exceptions and the supplemental transcript are part of our record. This record contains Millennium's proposed third amended counterclaims in the Florida litigation and the Florida court's order that denied leave to amend. The record does not include any other pleadings or orders from the Florida litigation. In particular, it does not contain Ameritox's operative complaint, any of Ameritox's superseded complaints, or any information about the content of Ameritox's claims against Millennium.

### 2. Res Judicata

Appellants allege that the district court erred in its application of the doctrine of res judicata, or claim preclusion. When considering the application of this doctrine in the instant case, we apply federal law. The federal law of res judicata "is to be examined and applied when a state court is faced with the issue of determining the preclusive effect of a federal court's judgment." See *Vandewalle v. Albion Nat. Bank*, 243 Neb. 496, 502, 500 N.W.2d 566, 571 (1993). Some courts and commentators have moved away from the terminology of "res judicata" and now use the term "claim preclusion." Our use of the term "claim preclusion" is explained in *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). However, because the federal courts still refer to res judicata and

because we must apply federal law in the instant case, we use the term "res judicata."

[5,6] "The doctrine of *res judicata* provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Carlisle Power Transmission Products v. The Union*, 725 F.3d 864, 867 (8th Cir. 2013). For res judicata to apply, there must be (1) a final judgment on the merits that is, (2) based on proper jurisdiction, (3) between the same parties or their privies, and (4) based on the same claims or causes of action. *Id.*

(a) Final Judgment
on Merits

As authority for its conclusion that the Florida court's denial of leave to amend was a judgment on the merits, the district court relied upon *King v. Hoover Group, Inc.*, 958 F.2d 219 (8th Cir. 1992). *King* is one of several cases in which the Eighth Circuit has discussed the preclusive effect of the denial of leave to amend. See, *Professional Management Associates v. KPMG LLP*, 345 F.3d 1030 (8th Cir. 2003); *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678 (8th Cir. 1997); *Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368 (8th Cir. 1997). We examine these cases and their application to the case at bar.

In *King*, Alan King sued his employer and a union in federal district court. After summary judgment was entered against King and his complaint was dismissed, he moved to file an amended complaint. He was denied leave to do so. Thereafter, King brought a second action against the same defendants in state court. The action was transferred to federal court and then dismissed as barred by res judicata. The Eighth Circuit affirmed, finding that King's second suit was barred by the entry of summary judgment in the first. At the end of its res judicata analysis, after it had concluded that the entry of summary judgment in the first case was a judgment on the merits, the court made the following statement: "It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject

of the proposed amended pleading." See *King*, 958 F.2d at 222-23.

Subsequent Eighth Circuit cases have repeated this broad statement regarding the res judicata effect of the denial of leave to amend. See, *Professional Management Associates, supra*; *Landscape Properties, Inc., supra*. However, despite the potential breadth of application of the statement in *King*, the Eighth Circuit has never determined that the denial of leave to amend was a judgment on the merits in a case with circumstances comparable to the instant case.

The Eighth Circuit has held that the denial of leave to amend was a judgment on the merits in three cases. See, *Professional Management Associates, supra*; *Landscape Properties, Inc., supra*; *King, supra*. In two of these, the trial court denied leave to amend because there was a prior judgment on the merits of the pleading sought to be amended. See, *Professional Management Associates, supra*; *King, supra*. In *King*, the court denied leave to file an amended complaint, because it had previously entered summary judgment against the plaintiff, King, on his original complaint. The same was true in *Professional Management Associates*. The plaintiff was denied leave to file a second amended complaint, because its first amended complaint had been dismissed for failure to state a claim under the Securities Litigation Uniform Standards Act of 1998.

Under such circumstances, the denial of leave to amend functioned as a judgment on the merits of the proposed amendments. In *King* and *Professional Management Associates*, the plaintiffs were not permitted to file amended complaints, because there had been a judgment on the original complaints. The lower courts denied leave to amend, because the claims sought to be added should have been brought before the final judgment in the case. Effectively, the lower courts said that the proposed amendments were futile—they lacked merit given the prior adjudication in the case. Thus, in both *King v. Hoover Group, Inc.*, 958 F.2d 219 (8th Cir. 1992), and *Professional Management Associates v. KPMG LLP*, 345 F.3d 1030 (8th Cir. 2003), the denial of leave to amend reflected upon the merits of the proposed amendments.

In *Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368 (8th Cir. 1997), the Eighth Circuit recognized that the existence of a judgment on the merits of the pleading sought to be amended was a significant factor in *King*. In *Kulinski*, the plaintiff moved for leave to amend his complaint after the complaint had been dismissed for lack of subject matter jurisdiction. Relying on *King*, the defendant argued that the denial of leave to amend had "preclusive effect as to claims in the amended complaint." See *Kulinski*, 112 F.3d at 373. But the court declined to follow *King*, because *King* "included an adjudication of the first complaint on the merits," whereas in *Kulinski*, the plaintiff's complaint was dismissed "only for lack of subject matter jurisdiction." See *Kulinski*, 112 F.3d at 373. The court did not consider such dismissal to be a judgment on the merits. Thus, the court "decline[d] to contort the district court's denial of [the plaintiff's] proposed amended complaint into a denial on the merits." See *id*.

In *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678 (8th Cir. 1997), there was not a prior judgment on the merits of the pleading sought to be amended. However, the reason for denying leave to amend was directly tied to the merits of the proposed amended pleading. The plaintiff's proposed amended complaint would have changed the remedy sought from damages to avoidance of sale. Because under the relevant statute, avoidance of sale and damages were alternative remedies, the plaintiff could not ask for avoidance of sale once he had requested damages in his initial complaint. The plaintiff was not entitled to the relief requested in the amended complaint, and the court denied leave to amend for that reason. Such denial was a judgment on the merits.

In each case where the Eighth Circuit held that the denial of leave to amend was a judgment on the merits, the denial either was directly tied to the merits of the proposed amended pleading or reflected that the proposed amendments were futile because there was a prior judgment on the merits in the case. Our research does not disclose any case in which the Eighth Circuit has concluded that the denial of leave to amend was a judgment on the merits where leave to amend was denied for reasons apart from the merits, such as timeliness. Indeed, in

*Kulinski*, where leave to amend was denied for a reason that did not reflect upon the merits, the Eighth Circuit found that the denial of leave to amend was not a judgment on the merits for purposes of res judicata. Because in the instant case, the denial of Millennium's motion for leave to amend its second amended counterclaims was denied as untimely, *King* and its progeny do not support a finding that the Florida court's order denying leave to amend was a judgment on the merits.

The approach taken by the court in *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), is more applicable to our determination whether the Florida court's denial of Millennium's motion to amend its second amended counterclaims was a judgment on the merits. In *Curtis*, 226 F.3d at 139, the court stated that the reason for denying leave to amend determined whether such denial was a judgment on the merits: "[D]enial of a motion to amend will not inevitably preclude subsequent litigation of those claims set out in a proposed new complaint. . . . Only denial of leave to amend *on the merits* precludes subsequent litigation of the claims in the proposed amended complaint." (Citation omitted.) (Emphasis in original.) The court held that where leave to amend was denied "on the procedural ground of untimeliness," the fact of such denial did not bar the plaintiff's second action. See *id*.

In the case at bar, Millennium's motion to amend its second amended counterclaims was not decided on the substance of the proposed counterclaims or their merits. The Florida court denied leave to amend, because Millennium's proposed third amended counterclaims were not timely filed and good cause had not been shown for the untimeliness. We thus conclude that the denial of leave to amend was not a judgment on the merits for purposes of res judicata and did not bar Millennium's claims against Ward in the district court.

### (b) Remaining Elements

[7] We decline to consider the remaining elements of res judicata. Because the first element of res judicata has not been met, it is not necessary to consider the remaining elements. And the record does not contain enough information about the Florida litigation for us to consider those elements.

An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

## VI. CONCLUSION

The district court erred in concluding that the Florida court's order denying leave to amend precluded appellants' complaint against Ward. We reverse the judgment of the district court that sustained Ward's motion to dismiss, and we remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

––––––––––––––

JENNIFER VAN KLEEK, APPELLANT, V. FARMERS INSURANCE
EXCHANGE, DOING BUSINESS AS FARMERS INSURANCE
GROUP, ALSO KNOWN AS "FARMERS," APPELLEE.

___ N.W.2d ___

Filed December 19, 2014.    No. S-13-1006.

1. **Insurance: Contracts: Appeal and Error.** The interpretation of an insurance policy presents a question of law that an appellate court decides independently of the trial court.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
4. **Insurance: Contracts: Appeal and Error.** An insurance policy is a contract, and an appellate court construes it like any other contract, according to the meaning of the terms that the parties have used.
5. ____: ____: ____. An appellate court gives terms in an insurance policy that are clear their plain and ordinary meaning as a reasonable person in the insured's position would understand them.
6. ____: ____: ____. An appellate court construes ambiguous terms in an insurance policy in favor of the insured.